Daniel Atkins
165 45 130th Ave. Apt. 13D
Jamaica, New York N.Y. 11434
December 12, 2013
Telephone: 347-567-4485

12 Civ. 5575 (JGK) (KNF)



United States District Court of New York
[Southern District of New York]
Attn. Judge John G. Koeltl
500 Pearl Street
New York, N.Y. 10007-1312

Re: Reply to Defendant's Counsel's letter requesting more time to submit documents for discovery.

Dear Judge Koeltl;

     I just viewed, and I am responding to the defendants counsel's requesting more time due to the inability to have this matter settled on December 05, 2013 with Judge Kevin Fox. I did not know that we were still in the discovery mode, due to previous notice from the court before going to the attempted settlement session.

     I read that counsel mentioned that his client is now concern about their fees, and I would agree so. I had mentioned this factor to his clients earlier this year (02/18/2013[16]) to their corporate officer and mentioned that it was not my intentions to cause the client, or the court the additional cost of litigation. And, I mentioned that it my interest that both sides be considerate of this fact to Pitney Bowes Corporate Officer. I stated that the cost of legal fees was an important concern to me as well as it would be for them. But, as I believe, someone thought that is was better to go on continue their costly legal defense[17]. My live has been altered and ruined by the incidents that have led us to this point, as well as the process of justice has been taken for a ride in defending those who have wronged myself, and them also. I realized that, for their company, settlement of these things would have served them better if they would have penalized those who broke their rules (policies by stealing from them and their clients, harassing me, assaulting me (and more). However, someone thought it different, and now counsel finds that legal fees are an issue. They were an issue when I contacted their corporate office.

---

[16] The plaintiff believes that this production of documents might have led to PBMS changing ownership rather than involve itself in a situation that might involve their clients bringing suit against them for their employees falsifying records of overtime paid to them) due to the legally bound material given to them. In that submission I gave them copies of their employees neutered time cards (containing the alterations of deceitful practices by their employees) – as mentioned on Vickie O'Meara' (Pres. Of Division of PBLS)

[17] In fact, during a prior conference it was counsel who requested more time – agreeing with the court to set trial in June of 2014. The plaintiff realized the cost and suggested earlier settlement to avoid the company (PBMS) having to pay more money on this case (as suggested in letter to company's President of Division).

I am attaching a copy of the letter sent to their client's headquarters (to the attention of Division Executive President Mrs. Vickie O'Mears) concerning the wrongdoing of PBMS' employees, and my concerns for minimizing Pitney Bowes' future legal fees and lengthy (and costly) endeavors. As a (and once so-called) valued employee I concern myself with the concerns for the advancements of company (though they turned their heads on me).

So, it is not my fault that this case has been extended thus far. For a few pennies the defendants counsel attempted to make me feel that nothing ever happened and things were okay be him and have me settle into another broken settlement agreement that Pitney Bowes failed to honor[18] in the first settlement again. But, they are not concern about the truth and my life has been ruined by those who sort to hide their wrongs and use a tactic that benefits those who violated company policy far beyond what they accused me of doing again[19]. Part of this caused their discriminating actions that have us here today. Insubordination[20] is an act against orders of superior, and what is not insubordination (not obeying any other that might seem unethical or illegal). Requesting clearance of sessions is 'not' unethical or illegal, but stealing from company and lying is 'insubordination'. These discriminating actions defined as just by plaintiff and discriminating by PBMS managers.

Current employees violated company policies during my tenure at White & Case, and they are still employed by the 'newly' formed venture of Novartis Ltd (formerly PBLS). Their crimes violated financial obligations from PBMS and their clients. Their fraudulent acts put PBMS at the risk of violating their financial, and business, relations. These acts of fraudulence have been overlooked and my reporting them has caused me to be subjected to transfer to mailroom, and evidentially terminated. To claim of the plaintiff violating policy is false because he requested whether these sessions would endanger the security of his future as he would be giving Pitney Bowes the authority to withhold any written documents from him, or anyone else who would ask for them to defend him from the exposure of harm to him during the course of his employment.

Their refusal to grant him view of his employment files, as company policy dictates, was another example of how he felt threatened by PBMS disallowing to review the full truth of his employment history and security of truthful factors that are hidden by the use of these sessions. This case has demonstrated how this has been done before, and how, on many occasions PBMS has hidden, and

---

[18] The plaintiff seeks another reading of this documents because it stated that they 'promise' to give plaintiff Team Lead training sessions – which they lured him to New York within and they did not do this (violating their god faith and trust in the settlement agreement) 'Until the end of the age'

[19] This is considering the first time they framed me (in Washington DC) by accusing me of delaying their client's filing and transferred me to demoted employment (PB 0078-79, PB 01137, and PB 00671) in 2003. And, all of what we have here is a repeated attempt to slander and destroy for good (which they were successful in doing)

[20] Insubordination is the act of willfully disobeying your superior. Refusing to perform an action that is unethical or illegal is not insubordination; **what, is not, insubordination? Insubordination** is the act of willfully disobeying your superior. Refusing to perform an action that is unethical or illegal is not **insubordination**; neither is refusing neither is refusing to perform an action that is not within the scope of authority of the person issuing the order. Insubordination is generally a punishable offense in hierarchical organizations which depend on people lower in the chain of command doing what they are expected to do. (generally – in most cases, but not all)

destroyed other facts from him. This has been demonstrated through his having PB bate stamped documents (left by his previous attorney) that proves that his was framed by many false charges, and how PBMS managers falsified their statement to rid themselves of him in Washington DC.

So, in light of the present situation concerning evidentiary proof of the facts presented by the plaintiff, I am asking the court to subpoena the records of time cards dated from 01/2011 to 2012 because the cards posted prior to these dates have been destroy (for the sole purpose of avoiding discovery and company accounting policy of destroying documents over three years). And, in addition to this request I am asking the court to allow me to subpoena my previous (and full set) of employee's personnel files for review. I am submitting document of request alongside this letter and exhibits.

But, if the defendant's counsel, or corporate officers are willing to admit that there were time reporting problem and that they will be dealt with I release the need for a subpoena on their files because it would only delay matters (but, it would also help move us to a final analysis of certain facts in this case as being true and over looked). And,

Since there has been so many false statements by defendants (and other coworkers who fear losing their jobs if they told the truth) the plaintiff is angry at their response to the truth. Since the slander by this manager, Luis medina, in his stating that the plaintiff called him 'white' and made fun of his skin is disheartening. I am sadden by this and the plaintiff is hurt by this remark.  He is Hispanic, and at no time did the plaintiff comment on color, race, sexual choice, and religion (or any other manner of personal choice by anyone). This man, in doing this, is calling the plaintiff a 'racist' and he (the plaintiff) is not amused at it. I never broke any rules of the company, but these employee did after signing the 'inside ethics' sessions. They took the sessions and broke the company policies and are being protected by counsel, and their managers (and never terminated). 'This is what is known as 'disparate treatment and 'discriminatory practices'.

Their officials falsified their information to the court (concerning the plaintiffs' employment history, and how it affected his inability to be promoted (and how it contributed too many demotions).

Over the years of employment the plaintiff has 'always' observed, and adhered to company policies and has 'never' violated them either. But, after fearing that several individuals would, and did, use the inquiring about the use of these training sessions as being used to his demise he deserved the right to have had an official explanation from someone in Human Resources before they decided to terminate him over those who 'intentionally' broke the policies which are regulated by trust of the company, and clients. PBMS, after years of telling the plaintiff that he was a valued, and well regarded employee, lied about their own honor. They looked the other way when certain individuals broke vital rules in the company. I am saddened by this, and I am asking the court to look at the facts and not the people.

Discrimination, sometimes, comes wrapped in the truth and it is easy to see when it is so visible.

Respectfully,

Daniel G. Atkins (Pro Se Litigant)

This document has been mailed on the ___23___ day, of December 2013
handed in

Alongside, the letter sent to PBMS Chief Executive Officer Mrs. V. Mears, I am sending the following document to support my additional claim of 'bad faith by the defendant, and their employees.

1. Declaration drawn up by Rorey McEvoy – (Pg. 2) Item 5.

2. Settlement Agreement was initiated based on the 'promise' to transfer and 'give training' for Team Lead position [wish was the inducing factor for the transfer – it never happened[21] – and statement read 'not from the beginning to the date of this release).

3. Promissory document inviting plaintiff to training in Team Lead (in settlement agreement) (DA 0156 (a), and 0156 (b) Qualifications for team Lead position (disqualifying plaintiff for position with EPD's issued – a 'hoax; and inducing to transfer) Date 03/29/2006

4. Counsel forgets (conveniently) to mention that settlement agreement was signed by plaintiff under the care by therapist instruction (which knew nothing about legal matters on 04/05/2006

5. After a few sessions of counseling, which was initiated on 03/08/2006 DA 0141, and other documents DA 0138, 0140). Document signed under the care of therapist, which indicated that she thought that signing agreement because Pitney meant to do good for plaintiff (stated mind then v. present state the question). The settlement mentions: 'any breach of the provisions of this paragraph by Atkins shall be considered a material breach of this agreement[22].

6. Access to Personnel Files (denied by HR and Corporate – PBMS Guideline allows this process, but the plaintiff was denies company process as written in handbook for all employees – disparate treatment, and discriminating activity. DA 0054 11/17/2010 – Letter requesting personnel filed (to manager) as policy states.

7. Plaintiff completed training sessions (similar to recent 2011 sessions in question) under the instructions of therapist 04/28//2006[23]) because she said that it wouldn't hurt. But, due to PBMS withholding employment folder review (and the trouble that the plaintiff was experiencing in the copy center at White & Case) he requested a 'full explanation of its scope to

---

[21] A settlement, as well as dealing with the dispute between the parties is a <u>contract</u> between those parties, and is one possible (and common) result when parties <u>sue</u> (or contemplate so doing) each other in <u>civil proceedings</u>. The <u>plaintiff</u>(s) and defendant(s) identified in the <u>lawsuit</u> can end the dispute between themselves without a <u>trial</u>.[1] The contract is based upon the bargain that a party foregoes its ability to sue (if it has not sued already), or to continue with the claim (if the plaintiff has sued), in return for the certainty written into the settlement. The courts will enforce the settlement: if it is breached, the party in default could be sued for breach of that contract. In some jurisdictions, the party in default could also face the original action being restored. And, in the United States, Generally, when a settlement is reached in the U.S., it will be submitted to the court to be "rolled into a <u>court order</u>". This is done so that the court which was initially assigned the case may retain jurisdiction over it. The court is then free to modify its order as necessary to achieve justice in the case, and a party that breaches the settlement may be held in <u>contempt of court</u>, rather than facing only a civil claim for the breach. In cases where confidentiality is required by the parties, the court order may refer to another document which is not disclosed, but which may be revealed to prove a breach of the settlement.

[22] This portion of the agreement has been met, but PBMS has not met its obligation to give plaintiff 'promised' training (agreement in paragraph two).

[23] This was done a day before PBMS managers issued the plaintiff an invitation to train at Team Lead position I n lure of settlement agreement  (flawed by bad intentions, and never came to be fulfilled).

protect himself and he requested whether these sessions would prevent his seeing his files[24] (as company directs by policy[25]). He 'never' refused to take these sessions[26] (as done before). He just challenged the 'honesty' of the manager's intent and his manager's ability to hide the fraudulent activity and rid themselves of the plaintiff by using these sessions (and its signature to comply with the privacy of his rights to know) by using these sessions as a tool. The fear of being subjected to harm without future complaint was at the center of the plaintiff's complaint and current history proves him right of the fear, and my right to know (to know the true use against the plaintiff) and assurance of safety should fraudulent use should have been considered in this matter. In fact, the 'Inside Ethics[27]' sessions has been violated by the supervisors, as they fraudulently enter fraudulent time card reports and made overtime without working regular shifts 'regularly' and did not like that plaintiff telling them they broke the company policy (and the law).

8.  DA 0108 Discriminatory assignment of CSA (Brian Colvil) to Team Lead, when there were many African Americans candidates[28]available and 'more' qualified.

---

[24] Thinking that protective documents possibly meant included the disclosure of his records, and any other matters that he would be able to be subject to dispute in the future, he inquired about any such condition. Their refusal demonstrated their intention to withhold any information that he would be entitled to concerning his work record.

[25] PBMS human resources and corporate managers were the ones violating their own company's (PBMS) policy concerning employees viewing their files upon request. The plaintiff did not violate company policy, but a few persons caused this policy to be broken by Human resources, and corporate officers that denied him due process.

[26] 29 USC § 218c (5)(1)(b)(1)(b)(1) (2) Protections for employees - No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has (5) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title [1] (or amendment), or any order, rule, regulation, standard, or ban under this title [1] (or amendment) b) Complaint procedure (1) In general An employee who believes that he or she has been discharged or otherwise discriminated against by any employer in violation of this section may seek relief in accordance with the procedures, notifications, burdens of proof, remedies, and statutes of limitation set forth in section 2087(b) of title 15 (2) [Trade standards would include overcharging for undue labor – theft and policy of PBMS against – putting client and account at risk]

[27] As marked; "The modern workplace poses some difficult 'ethical challenges'. When you are presented with situations where the right course of action may not be immediately clear, the Business Practice Guidelines are there to provide guidance for 'every employee' to follow. This online course reviews the following: What Business Practice Guidelines are, and why they are important. The various "Company Policies and legal requirements' for employees conduct. Available resources and appropriate procedures for seeking advice or reporting concerns about matters of policy or the law" – Employment Termination Review Page (2) Dated 01/19/2012 – Disparate Treatment – Employee that stole, and broke other rules 'Insubordination: (Failure to Comply with Management Request with PBMS' Policies and Rules of Conduct). Worst scenario: they took the training and broke policy (and, managers covered this up)

[28] All, having years of experience in managing sites at PBMS. Manager (Luis Medina) chose Caucasian as his Team lead (while other African American were not allowed to become Team Leads (Ed Anderson, Gerald Kelson, and the plaintiff (backgrounds already established).

9.  Time Card Reporting Sheet (weekly requirement by all employees) See Vicki O'Meara sheet attached)[29] – disparate treatment – here, Pitney Bowes supervisors violated policy and were not terminated (cover-up) and is discriminating in nature

10. Four years of documents testimony issued by his manager (Luis Medina) that the 'plaintiff adhere' to all of PBMS' policies (regularly). Same manager that 'claimed' that plaintiff threatened him[30] (see claim sheet from defendant). Review letter, and comments letter. Reviews of 07/08/2008; 06/24/2009; 07/12/2010; and 06/24/2011 'no indication of threats and any bad behavior concerning plaintiff (Luis Medina – manager issuing reviews)  - Results of this testimony filed with answers to Judge  Kevin Fox (also, electrically filed in court records)

11. Same page (3) item nine reads 'discrimination based upon race and religion' – EEOC only has those listing because when I stated that harassment, defamation, and other existed their replied was ' when filing EEOC, they are limited to claims (DA 0011), even though plaintiff are victimized by limited class. I believed that was, and did become a victim of racial discrimination (in being appointed and trained for the Team Lead position) and religion (major religious slur about Jesus Christ) due to certain factors. But, I was also a victim of 'Job Classification', victim of assaults (one proven by their submission by their human resources documents), harassment, demotions, slander[31], and more. The retaliation was done in the method of removal from the copy center and the denial of earning overtime (like others).  And, the wrongful termination is (and was) due to me 'blowing the whistle' on time card fraud and manager taking clients (partners') financial matters out of the copy center, requesting the viewing of my personal files (copy policy) and exposing the assault from another supervisor. I became a threat and my requesting clearance over the confidentiality and inside ethics sessions' use made me a threat to the operating of deceit and wrongdoing.

12. Additional comments, concerning assault (or pushing incident) by supervisor in same (above) section of testimony comments by defendant's human resources department (defendant's counsel is fighting to have these things hidden from plaintiff, and court) – Also filed with Judge Kevin Fox's answer (and electronically file with court[32]) - No physical document in the

---

[29] This document states the following; 'This time record is a legal recordkeeping document and must be accurate. By submitting this time record and clicking YES below you are certifying that you have entered all time actually worked, including time worked outside of your regular work schedule….. You understand that falsification of your time is a violation of Pitney Bowes policy and law and may result in disciplinary action, up to and including termination.

[30] The plaintiff is amazed at the statement made against him. He 'always; held Mr. Medina at a high level of respect, and would never have imagined that such has been claimed by Mr. Medina. All letters addressed to Mr. Medina shows how the plaintiff regarded him in a different light. Never, and not now, is the plaintiff in any training for pastor (as defendant as claimed). Not that he desires to follow this route in the near future.

[31] The most feared substance of this slander was the (so-call) threat of the manager (which turns out to be some fabricated statement that the plaintiff was supposed to have called him a white devil. This statement, the plaintiff believes, was coerced by supervisor Brain Colvil – who sent 10/05/2010 email to manager.

[32] A large listing of accusations, false insults, racial comments, and other wrongdoings (and falsehoods) are listed in the submission to Judge Fox's inquiry of facts (also, electronically file with court), and the plaintiff would have 'never' been privy to them except that they were submitted to the court and their requirement was to share with plaintiff (as rules of submission by the court).

submission, but they have been submitted to the court and are under listing of evidence / comments submitted to Judge Fox.

13. Page 'Employment Termination Review Request Form – Sessions taken by other employees and they 'still' violated policy by stealing, making false statements.

14. DA 0012 – Training Notice – Luis Medina, Brian Colvil, Fidel Razack, Jerry Lester all took sessions and stole time[33], and other materials from Pitney Bowes (documented) and client (White & Case LLP). They are 'still' employed after 'violating' company policies in handbook that they have all read and agreed to. I, the plaintiff, broke no policy because I followed procedures by asking 'human resources' to explain the full scope (and protections) of these sessions so that they would not be used against me (by withholding information important to me by way of my files). I was denied before (though it is company policy to grant such activity). Disparate Treatment – This is a discriminating activity.

15. DA 0118 – Documented email from supervisor, which continuously harassed and insulting me.

16. PB 00047 – Time Card procedure policy (broken  by supervisors, and overlooked by manager)

17. Declaration by Dana Roekle (pg. 2) Item 3 – dates given are dates of maturity and not ' actual dates of hire and termination (which would be 03/12/1990 hire, and terminated 01/30/2012), and positions worked at various PBMS sites[34]

18.  Same Dana Roekle's page (2) Item 4 – Piper Marbury – 1991 – 1993 Site Manager[35] PB 01014, (DA 0188)(PB 00133)Piper Marbury; Morgan Lewis and Bockius – Copy Center Lead (demoted) – mailroom run by firm staff, not PBMS staff; Finnegan, Henderson, Farabow, Garrett and Dunner – Quality Control Supervisor (see PB00063, and  00057[36]); Dewey Ballantine – assigned to mailroom (but, contract did not extend to mailroom

19. Copy Center only Plaintiff's transfer was a hoax (DA 0156(a), due to qualifications needed [PB 0156(b)]

---

[33] This is a violation in PBMS' handbook, but manager overlooked these violations (becoming accessory to the crime) and this is 'dander' of plaintiff's name and reputation DA 0053 10/06/2010 'Response letter to 10/05/2010 letter (email) from Brian Colvil (Slander)

[34] *Perjury - v.* - False swearing. [2] *v.* - At common law, a willfully false statement in a fact material to the issue, made by a witness under oath in a competent judicial proceeding. By statute the penalties of perjury are imposed on the making of willfully false affirmations (demonstrating false records which plaintiff requested to be view, and which held him back many years from higher job opportunities within PBMS.

[35] Also, see PB 01014 – Plaintiff replaced the previous Site Manager due his employment problem which 'nearly' cost PBMS the site.

[36] But, plaintiff's reputation was destroyed by false accusation by manager (Scott Mackey) PB 00078-79, due to his instructions (PB 01137) and the report of incident PB 00671, and Human resources letter of transfer due to error created by manager's instructions PB 00887, and PB 00080 (which speaks to PB 01137 directly).

20. CA 0001 Site Manager's card (amongst other 'official' leadership team of PBMS (Altered records don't show this); DA 0194 Profile Sheet as Site Manager (Pictured ID)

21. Dana Roekle's page (2) Item 5 – Plaintiff began working in the copy center, and transferred to mailroom in 11/30/2010 – DA 0055-56 (promised that this assignment would be temporary – by manager)

22. Dana Roekle's page (2) Item 8 – statement by two Team Leads erroneous (plaintiff stating that 'he has something going on down the line'). Statement is (are) false in content and (possibly) coerced. See #3 on these listings

23. Charge of Insubordination' is challenged and is wrong by definition (and use here) because never refuse to 'never' take these sessions. In spite of the facts, he had been subjected to the fraudulent acts by the defendants (previous managers, supervisors, and the deceitfulness by officials in the human resources departments) in the past and wanted to be 'assured' that his actions were legitimate by asking those who knew whether he was at risk. DA 0015/16

24. DA 0005 / DA 0160 (2) upon arrival in New York, the plaintiff started working in the copy center as instructed by Mr. Marenelli – to report to the copy center and reporting to Mr. Thomas Gill (Manager of site, and Copy Center Director).

25. Two copies of U.S.D.C. Subpoenas  (one for the time cards of defendants, and one for plaintiff's employment files) ** These should be sent by the defendant (they have the records)

26. Blue Slip Sheet

27. Copies of 'submitting' subpoena(s) for records of time cards, and employee's folder (denied during his employment).

28. Plaintiff realizes that PBMS' managers were altering his records because he had achieves many things, and the demotions and lies were (and are) unnecessary – see Site Managers' Card; PB 01014 When he 'replaced' another manager at Piper & Marbury LLP; PB 00133

29. September 19, 1977 Completed training for 'Front Line Leadership'

30. Certificate of Recognition (PBMS) at Finnegan Henderson – by: Thomas Bevenueto (general Manager / Washington DC)

31. DA 0270 / 0271 – Standards of Conduct page (reframe form 'any' offensive behavior

32. DA 0102 – Luis Medina taking (partners) clients financial materials off the premises (marked 'high confidential)

33. Plaintiff school schedule for Spring Semester 2014 (Tuesdays, and Saturday classes), and past semester grades (Fall 2013).

34. White 7 Case Certification Guidelines (Most guidelines violated by supervisors – computer use, time card fraud, are amongst the many). Manager taking highly confidential files off premises,

    • Not submitted today, but record already established –

    • Brain Colvil's religious comments (Jesus Christ being gay.

EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Julie L. Sauer
Attorneys for Defendants
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com
jsauer@edwardswildman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL ATKINS,

      Plaintiff,

     -against-

PITNEY BOWES MANAGEMENT SERVICES,
et al.,

      Defendants.

12 Civ. 5575 (JGK) (KNF)

**DECLARATION OF
RORY J. MCEVOY**

    RORY J. McEVOY, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that

the following is true and correct:

    1.    I am a member of the law firm of Edwards Wildman Palmer LLP, attorneys for

Defendants Pitney Bowes Management Services ("PBMS"), Luis Medina, Brian Colvil (named

incorrectly in the Second Amended Complaint as "Brian Covil"), Hassain Razack (named

incorrectly in the Second Amended Complaint as "Fidel Razack") and Jerry Lester (collectively

"Defendants") and I am fully familiar with this proceeding as well as the specific matters set

forth herein.  I make this declaration in support of Defendants' motion to dismiss parts of the

Second Amended Complaint or, in the alternative, for partial summary judgment, and for a more

definite statement.

2.     Based on my review of the file, on March 19, 2003, Plaintiff filed a Charge of Discrimination with the District of Columbia Office of Human Rights ("OHR") and the United States Equal Employment Opportunity Commission ("EEOC"), which alleged that PBMS discriminated against him on the basis of his race (Black) and matriculation (attending college), subjected him to a hostile work environment, and retaliated against him for filing internal complaints of discrimination.  On July 1, 2003, PBMS filed a position statement in response to Plaintiff's Charge and denied all of the material allegations therein.  A copy of the Charge of Discrimination, dated March 19, 2003, is Exhibit 1 hereto.

3.     Based on my review of the file, on March 3, 2005, the OHR determined that there was no probable cause to believe that PBMS engaged in any unlawful discriminatory or retaliatory practices towards Atkins.  Thereafter, the EEOC issued Plaintiff a Notice of Right to Sue.  A copy of the determination from the OHR, dated March 3, 2005, is Exhibit 2 hereto.

4.     Based on my review of the file and documents filed on the electronic docket of the United States District Court, District of Columbia, on May 6, 2005, Plaintiff filed a Complaint against PBMS in the United States District Court, District of Columbia alleging claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e ("Title VII") and 42 U.S.C. §1981 ("§1981") and a claim for wrongful termination.  During the course of the litigation, Plaintiff was represented by Ardelia Davis, Esq., Law Office of Ardelia Davis.  A copy of the Complaint, dated May 6, 2005, is Exhibit 3 hereto.

5.     Based on my review of the file, in April 2006, the parties settled the case.  As part of the settlement, Plaintiff forever released all claims against PBMS "of whatsoever character, nature or kind, actual or potential, known or unknown, suspected or unsuspected, whether arising in law or in equity out of any federal, state or city constitution, statute, ordinance, by-law or

2

regulation . . . which A[tkins] ever had, now has . . . or may have for, or by reason of, any matter, cause, event or thing whatsoever, from the beginning of the world to the date of this Release." Under the terms of the settlement, PBMS agreed to transfer Plaintiff to an available Customer Service Associate position in the New York City area. A copy of the Settlement Agreement and Release, signed by Plaintiff on April 5, 2006, is Exhibit 4 hereto.

6.     Based on my review of the file and documents filed on the electronic docket of the United States District Court, District of Columbia, on April 25, 2006, the parties filed a Stipulation of Dismissal with the Court and the Court entered an Order of Dismissal. Copies of the Stipulation of Dismissal and Order of Dismissal, dated April 25, 2006, are Exhibits 5 and 6 hereto.

7.     Based on my review of the file, on February 7, 2012, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") and the EEOC alleging (i) discrimination on the basis of his race (Black) and religion (Christian); (ii) harassment; and (iii) retaliation. A copy of the Charge of Discrimination, dated February 7, 2012, is Exhibit 7 hereto.

8.     Based on my review of the file, on April 26, 2012, the EEOC determined that it was unlikely that it would be able to complete its administrative processing within one hundred and eighty days from the filing of the charge and issued Plaintiff a Notice of Right to Sue. A copy of the Notice of Right to Sue, dated April 26, 2012, is Exhibit 8 hereto.

9.     On July 16, 2012, Plaintiff filed a Complaint against PBMS with the United States District Court, Southern District of New York alleging (i) discrimination on the basis of his race (Black) and religion (Christian) and retaliation in violation of Title VII; (ii) discrimination and retaliation on the basis of his race in violation of §1981; (iii) violation of

42 U.S.C. §1983; and (iv) wrongful termination.  A copy of the Complaint, dated July 16, 2012, is Entry 2 on the Court's electronic docket.

10.    On August 14, 2012, Plaintiff filed an Amended Complaint, which added several individual defendants as well as additional allegations in support of his claims.  A copy of the Amended Complaint, dated August 14, 2012, is Entry 6 on the Court's electronic docket.

11.    On September 4, 2012, Plaintiff filed a motion for leave to file a Second Amended Complaint, which attached a copy of the proposed amended pleading.  The Second Amended Complaint added new allegations in support of his claims as well as unnamed individual defendants Plaintiff refers to as "Human Resources + Corporate Officers."  A copy of the Notice of Motion to File Second Amended Complaint and attached Second Amended Complaint, dated September 4, 2012, is Exhibit 9 hereto.

12.    The Court granted Plaintiff's request to file the Second Amended Complaint at the preliminary conference held on October 16, 2012.

13.    A chart of all allegations in the Second Amended Complaint that occurred prior to April 5, 2006 is Exhibit 10 hereto.

Dated: New York, New York
       November 16, 2012

                                                    Rory J. McEvoy

4

*Copy of SETTLEMENT AFTER plaintiff (only) signature.*

# AGREEMENT OF SETTLEMENT AND RELEASE

This Agreement of Settlement and Release ("Agreement") is made by and between Daniel Atkins ("ATKINS") and Pitney Bowes Management Services ("PITNEY BOWES").

WHEREAS, ATKINS has been an employee of PITNEY BOWES since 1990 and is currently a Customer Service Associate in PITNEY BOWES' copy center at the law firm of CADWALADER WIKERSHAM & TAFT in Washington, D.C.; and

WHEREAS, ATKINS claims that he has been discriminated and/or retaliated against in violation of 42 USC § 1981 and Title VII of the Civil Rights Act of 1964 and that he has been wrongfully terminated, resulting in his suffering financial loss and other damage; and

WHEREAS, ATKINS filed an action against PITNEY BOWES in the United States District Court for the District of Columbia, entitled <u>DANIEL ATKINS, Plaintiff, vs. PITNEY BOWES MANAGEMENT SERVICES, Defendant</u>, Civil Action No. 1:05cv00912 (RWR/JMF) (hereinafter "the Civil Action");

WHEREAS, PITNEY BOWES has denied that it acted unlawfully or wrongfully in any respect in connection with ATKINS' employment; and

WHEREAS, the parties desire to settle fully and finally all differences between them, including, but in no way limited to, those differences described above;

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, and to avoid unnecessary litigation, it is hereby agreed by and between the parties as follows:

1. PITNEY BOWES AND ATKINS will enter into a Stipulation And Order Of Dismissal With Prejudice of this action ("Stipulation") upon execution of this Agreement.

2. In settlement of ATKINS' claims, PITNEY BOWES agrees to transfer ATKINS to an available Customer Service Associate position in the New York City area within sixty (60) days of the execution of this Agreement or whenever a position becomes available, whichever occurs first. When the transfer is effectuated, ATKINS will remain an at-will employee of PITNEY BOWES. PITNEY BOWES also agrees to provide to ATKINS and place in his personnel file a copy of the letter attached as Exhibit A. PITNEY BOWES also agrees to enroll ATKINS in Team Lead Training as referenced in Exhibit A. The parties expressly agree that PITNEY BOWES will not pay ATKINS any monies, including but not limited to, attorneys' fees or his costs incurred in this Civil Action.

*NEVER happened DA0156(a) DA0156(d)*

*document DA0156(a)*

3. ATKINS acknowledges that the considerations provided for by paragraph 2 is in addition to and is not in place of any payment, benefit or other thing of value to which ATKINS might otherwise be entitled under any policy, plan or procedure of PITNEY BOWES or pursuant to any prior agreement or contract with PITNEY BOWES and that none of such considerations are wages.

4. ATKINS hereby represents that he has not filed a complaint, charge or claim against PITNEY BOWES, or any of its current or former directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, their respective successors or

ATKINS' initials

*DA0136*

assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, with any court or agency except for the Civil Action and the charge of employment discrimination ATKINS filed with the D.C. Office of Human Rights (Docket No. 03-255-P (CN)) on March 19, 2003, and cross-filed with the Equal Employment Opportunity Commission as Charge No. 10CA300139.

5.  On behalf of himself and his heirs, executors, administrators, and assigns, ATKINS agrees never to directly or indirectly commence or prosecute, or to assist in the commencement or prosecution, or in any way cause, or advise to be commenced or prosecuted, any action or proceeding against PITNEY BOWES or any of its current or former directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, with respect to any matter arising from his employment with PITNEY BOWES, whether or not now known, based upon any act, transaction, practice, conduct or omission that occurred prior to the date of this Agreement. The institution of any such action that is the subject of this Agreement shall be considered a material breach of this Agreement. In the event that ATKINS has instituted any actions or proceedings against PITNEY BOWES, ATKINS agrees promptly to take all necessary steps to withdraw those actions or proceedings with prejudice.

6.  ATKINS hereby agrees on behalf of himself, his agents, representatives, assignees, attorneys, heirs, executors, administrators, successors and assigns (collectively "ATKINS"), to forever release and forever discharge PITNEY BOWES, including any and all of its current and former directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, any individual now or formerly employed by PITNEY BOWES whether acting as agents for PITNEY BOWES or in their individual capacities, and their respective heirs, executors, administrators, successors and assigns, of and from all manner of actions, proceedings, causes of action, suits, debts, sums of money, accounts, contracts, controversies, agreements, promises, damages, judgments, claims, liabilities, terms, sanctions and demands, of whatsoever character, nature or kind, actual or potential, known or unknown, suspected or unsuspected, whether arising in law or in equity out of any federal, state or city constitution, statute, ordinance, by-law or regulation (including but not limited to any and all claims for discrimination under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, The Older Worker Benefits Protection Act, the Family and Medical Leave Act, the Consolidated Omnibus Budget Reconciliation Act, the Americans With Disabilities Act, the Employee Retirement Income Security Act, and all claims for breach of contract, breach of fiduciary duty and wrongful discharge and any and all claims relating to ATKINS' employment at PITNEY BOWES, all claims that were or could have been raised in the Civil Action and/or in any agency charge, all claims under any other statute, state or federal, and all claims for attorneys' fees, costs, disbursements or the like), which ATKINS ever had, now has, or which he or his heirs, executors, administrators, successors, and/or assigns can, or may have for, or by reason of, any matter, cause, event or thing whatsoever, from the beginning of the world to the date of this Release.

7.  PITNEY BOWES has entered into this Agreement solely for the purpose of avoiding the burden and expense of further litigation. The making of this Agreement is not intended, and shall not be construed, as an admission that PITNEY BOWES or any of its current or former directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers,

DC1 45681970.1

ATKINS' initials

agents, employees, subsidiaries, affiliates or related business entities, have violated any federal, state, or local law (statutory or decisional), ordinance or regulation or that PITNEY BOWES or any of its current or former directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, their respective successors or assigns or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities have committed any wrong against ATKINS.

8.   ATKINS and his attorney, Ardelia Davis and her employees and representatives, represent that they have not and agree that, except as required by law, they shall not publicize or disclose the terms, contents, conditions or existence of this Agreement, whether in writing or orally, to any person, except to ATKINS' accountant, tax preparer or financial consultant, if requested by such person or entity, and then only if reasonably necessary to prepare his income tax returns or other financial reports in the performance of such person's or entity's professional services rendered to ATKINS. ATKINS and his attorney further agree not to solicit or initiate any demand by others not party to this Agreement for any disclosure of the terms and conditions of this Agreement. Any breach of the provisions of this paragraph by ATKINS shall be considered a material breach of this Agreement.

9.   ATKINS agrees that he will not at any time (i) publicly disparage or encourage or induce others to publicly disparage PITNEY BOWES, and/or (ii) engage in any conduct that is in any way injurious to PITNEY BOWES' reputation and interests (including, without limitation, any negative or derogatory statements or writings). Disparagement shall not include comments that are made to a governmental entity or court relating to his employment with PITNEY BOWES after the date of this Agreement. PITNEY BOWES will undertake reasonable and good faith efforts to advise its managers with a need to know about this Agreement and to refrain from making disparaging comments about ATKINS or his employment with the Company.

10.  Notwithstanding the contents of paragraphs 8 and 9, the parties and their counsel may respond to questions regarding the Civil Action by stating: "The case has been resolved between the parties."

11.  ATKINS will refer all inquiries about the Civil Action to Zeke Dorsey at PITNEY BOWES, who will not be responsible for inquiries made regarding ATKINS other than as set forth in this paragraph.

12.  The parties herein agree that this Agreement and Release will be governed by the laws of the District of Columbia and that ATKINS will submit to the jurisdiction of the superior and/or federal courts located within the District of Columbia for the resolution of any dispute that may arise hereunder.

13.  This Agreement is the complete understanding between the parties and may not be changed orally.

14.  ATKINS understands and agrees that he:

   A.   Has had the opportunity to consider this Agreement for a full twenty-one (21) days before executing it.

   B.   Has carefully read and fully understands all of the provisions of this Agreement.

DA
ATKINS' initials

DCI 45681970.1

C.   Is, through this Agreement, releasing PITNEY BOWES and its officers, agents, directors, supervisors, employees and representatives, and their successors and assigns and all persons acting by, through, under or in concert with any of them from any matter arising from his employment with PITNEY BOWES, whether or not now known, based upon any act, transaction, practice, conduct or omission that occurred prior to the date of this Agreement.

D.   Knowingly and voluntarily agrees to all of the terms set forth in this Agreement.

E.   Knowingly and voluntarily intends to be legally bound by the same.

F.   Was advised and hereby is advised in writing to consider the terms of this Agreement and consult with his legal counsel, Ardelia Davis or another attorney of his choice prior to executing this Agreement, and understands that the terms of this Agreement were determined through negotiation between counsel for ATKINS, acting as attorney in fact and law on behalf of ATKINS, and the Company's attorneys, Robins, Kaplan, Miller & Ciresi L.L.P.

G.   Has a full seven (7) days following the execution of this Agreement to revoke this Agreement by forwarding a letter to PITNEY BOWES' counsel, Eric S. Jackson, Robins, Kaplan, Miller & Ciresi L.L.P., 1801 K Street, NW, Suite 1200, Washington, D.C. 20006 within the seven-day period, and has been and hereby is advised in writing that this Agreement shall not become effective or enforceable until the revocation period has expired.

15.   Should any provision of this Agreement require interpretation or construction, it is agreed by the parties that the entity interpreting or construing the Agreement shall not apply a presumption that the provisions hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared the Agreement, it being agreed that the parties (by their respective attorneys) have participated in the preparation of all the provisions of this Agreement.

16.   ATKINS acknowledges that he has read this Agreement in its entirety, that he has had all of its provisions explained to his by his counsel, who has answered any and all questions that he has asked with regard to the meaning of any of the provisions thereof, and that he consents to all the terms and conditions contained herein.

17.   It is agreed that the parties to this Agreement shall assume and bear their own costs of litigation, including attorneys' fees, as a result of or in connection with the Civil Action, except as otherwise provided herein.

18.   This Agreement may be executed in counterparts.

WHEREFORE, the parties hereto have caused this Agreement to be signed as of the day(s) and date(s) first written below.

**PLEASE READ CAREFULLY. BY YOUR SIGNATURE, YOU AGREE TO THE TERMS SET FORTH ABOVE.**

---

ATKINS' initials



**KAISER PERMANENTE.**

APPOINTMENT SLIP/CHART REQUEST SLIP

PATIENT NAME: _____   I.D. # _____

| APPOINTMENT | CHART REQUEST |
|---|---|
| APPOINTMENT DATE: _April 19, 2006_ | DATE: _____ |
| APPOINTMENT TIME: _11:00 am_ | TIME: _____ |
| PROVIDER: _Donna Young_ | PROVIDER/LOCATION: _____ |
| COMMENTS: _____ | COMMENTS: _____ |

00004975  (3/89)  APT./M.R.

APT. RECPT./MEDICAL RECORD

---

**KAISER PERMANENTE.**

Res.#10        03/22/2006        Trans #10994
B475977        9:20 AM          Center: 209

**RECEIPT**

Marlow Heights Medical Center
5100 Auth Way
Suitland, MD 20746

Member Name:                          ATKINS, DANIEL
Encounter# m06081192
OFFICE VISIT, MI 22                        $20.00

                        SUB TOTAL:        $20.00
                        TOTAL DUE:        $20.00

VISA                                      $20.00
Member Name ATKINS/DANIEL
Exp Date 1106
Card Number XXXXXXXXXXXX1195
Authorization# 01479A

Thank You for visiting Kaiser Permanente.
Please visit our web site at:
www.kp.org

---

**KAISER PERMANENTE.**

Res.#10        03/08/2006        Trans #10714
0667603        1:12 PM          Center: 209

**RECEIPT**

Marlow Heights Medical Center
5100 Auth Way
Suitland, MD 20746

Member Name:                          ATKINS, DANIEL
Encounter# m06067180
OFFICE VISIT, MI 22                        $20.00

                        SUB TOTAL:        $20.00
                        TOTAL DUE:        $20.00

MASTERCARD                                $20.00
Member Name ATKINS/DANIEL
Exp Date 0709
Card Number XXXXXXXXXXXX6691
Authorization# 066679

Thank You for visiting Kaiser Permanente
Please visit our web site at
www.kp.org



**KAISER PERMANENTE**®

Donna Young, MA, LCPC
Psychotherapist

Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
Marlow Heights Medical Center
5100 Auth Way
Suitland, MD 20746
Phone: (301) 702-5143
Appt/Advice: (301) 702-5140
Emergency: (800) 677-1112



**KAISER PERMANENTE**®

Donna Young, MA, LCPC
Psychotherapist

Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
Marlow Heights Medical Center
5100 Auth Way
Suitland, MD 20746
Phone: (301) 702-5143
Appt/Advice: (301) 702-5140
Emergency: (800) 677-1112

DA0139

After Visit Summary

Daniel G Atkins (MR # 581122...    **178**

## Visit Information

| Visit Information | Date & Time | Provider | Department |
|---|---|---|---|
| | 11/17/2006 10:00 AM | DONNA YOUNG | Psychothe-Adlt Mar Hts |

## Instructions and Follow-Up

**Patient Instructions**

1. Continue to use behavioral strategies to reduce stress and improve mood such as exercise, diet and acts of spiritual faith.

2. Keep next therapy appt scheduled for Friday, December 22, 2006 at 10:00am.  Please call if you need to cancel your appt on (301) 702-5143.

DONNA YOUNG, LCPC      November 17, 2006      10:43 AM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## If You Are Filling Prescriptions Today

Please check in at the Pharmacy where you wish to have your prescription filled so processing can be completed.  If you would prefer to have your prescription filled at a later date or through the mail, please contact the pharmacy directly by phone.

## Additional Information

Are you a registered member of kp.org?  If not, please visit www.kp.org to register and to begin using this exceptional feature.  Via the website, you can view recent lab test results, past office visit information, immunizations, and medication allergies.  You can also send secure e-mail messages with questions to your provider or to the advice nurse, and you can refill prescriptions as well as have the ability to check your eligibility and benefits.  Secure, easy to access and always available.



**KAISER PERMANENTE.**

Mid-Atlantic Permanente Medical group, P.C.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
2101 East Jefferson Street  Rockville, MD 20852

Daniel G Atkins
581122126

### VERIFICATION OF TREATMENT

The above named patient has received medical treatment on 3/8/06.  Daniel G.
Atkins has the following physical findings/diagnosis - Confidential.  He will need
a follow-up appointment on or about 3/22/06.

Provider Signature : _Donna Young, LCPC_
DONNA YOUNG   3/8/2006   2:11 PM   #5449

Psychothe-adlt Mar Hts
5100 Auth Way
Suitland, MD 20746
Phone: 301-702-5000

=================================================================

I certify that I have reviewed, understand and agree with the information above. I authorize the verification
of this VOT form by my school, my employer, or any person or entity that may be responsible for
payment of services provided through Kaiser Permanente MidAtlantic States.

_Daniel G. Atkins_                3/08/06
**Patient Signature**                       **Date**

**KAISER PERMANENTE®**

Donna Young, MA, LCPC
Psychotherapist

Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
Marlow Heights Medical Center
5100 Auth Way
Suitland, MD 20746
Phone: (301) 702-5143
Appt/Advice: (301) 702-5140
Emergency: (800) 677-1112

DA 0141



**KAISER PERMANENTE.**

> Mid-Atlantic Permanente Medical group, P.C.
> Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
> 2101 East Jefferson Street  Rockville, MD 20852

Daniel G Atkins
581122126

## VERIFICATION OF TREATMENT

The above named patient has received medical treatment on 3/8/06.  Daniel G.
Atkins has the following physical findings/diagnosis - Confidential.  He will need
a follow-up appointment on or about 3/22/06.

**Provider Signature :** _Donna Young, LCPC_
DONNA YOUNG   3/8/2006   2:11 PM    #5449

Psychothe-adlt Mar Hts
5100 Auth Way
Suitland, MD 20746
Phone: 301-702-5000

=============================================================
 I certify that I have reviewed, understand and agree with the information above. I authorize the verification
of  this VOT form by my  school, my employer, or any person or entity that may be responsible for
payment of services provided through Kaiser Permanente MidAtlantic States.

_Daniel G. Atkins_          3/08/06
**Patient Signature**                          **Date**

**KAISER PERMANENTE®**

Donna Young, MA, LCPC
Psychotherapist

Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.
Marlow Heights Medical Center
5100 Auth Way
Suitland, MD 20746
Phone: (301) 702-5143
Appt/Advice: (301) 702-5140
Emergency: (800) 677-1112

DM 0141

# PITNEY BOWES MANAGEMENT SERVICES

March 29, 2006

Mr. Daniel Atkins
1308 Iverson Street
Apartment 205
Oxon Hill, Maryland  20745

Dear Mr. Atkins:

In light of your years of service to the Company and for other considerations, Pitney Bowes invites you to participate in Team Lead training.

Thank you for your service to the Company.  If you have any questions, please contact me.

Sincerely,

Zeke Dorsey

DA0156 (A)

DCI 45682001.1

# Pitney Bowes Management Services

*May 8, 2003*                                           *Job Opportunity:  TRI-State*

| | |
|---|---|
| *Position:* | **Team Leader** |
| *Site Location:* | **Stamford, Connecticut** |
| *Report to:* | **Customer Service Manager** |

## Position Summary:

Supervise distribution center with high volumes of:  inbound/outbound mail, domestic/international shipping, receiving/accountables and reconciliation of high value purchasing orders.  Working environment is a campus style facility comprised of four buildings.  Mail and shipping is consolidated out of the main facility. Heavy lifting, van driving and flexibility to work additional hours as needed are required.

## DUTIES and RESPONSIBILITIES:

- Assists with the daily supervision of overall site operations including domestic & international mail and shipping as well as receiving and purchase order reconciliation/"Lawson Receiving" to ensure all work is completed in a timely fashion.
- Ensure client products are shipped according to client procedures.
- Interface with customers on a daily basis to resolve any issues.
- Works with management to ensure all service levels comply with client and PBMS requirements.
- Trains, coaches, and develops site personnel to ensure a positive and productive work environment.
- Provides feedback for continuous improvement to the client and management.
- Performs other duties as assigned.

## MINIMUM QUALIFICATIONS:

- Experience with shipping materials preferred.
- Possess leadership skills and ability to work as part of a team.
- Problem solving skills and ability to make sound and logical decisions.
- Strong planning, prioritization, organizational and follow up skills.
- Effective oral and written communication skills.
- Computer literate (MS Word and Excel, E-mail).
- Ability to work independently with little or no supervision.
- Ability to lift up to 75 lbs. required.
- Professional image and customer service oriented.
- Must possess an excellent attendance record and be flexible and reliable.
- Individuals on EPD are not eligible.

All interested current employees must complete a PBMS transfer application per the job posting procedures.  Posting period closes May 22, 2003.

PBMS is an EEO and Affirmative Action Employer that values diversity in the workplace.
Women and minorities are encouraged to apply.
Fax or forward your application to:
Pitney Bowes Management Services
Oneida Hart, Human Resources Manager
23 Barry Place MSC 16-02
Stamford, CT 06926
Fax: (203) 325-0462

*damaging tools*

DA 0156 (B)



# Access to Personnel Files

*Revised January 1, 2004*

*Access to employee personnel files is restricted to employees with authorization.*

## Overview

Pitney Bowes maintains a personnel file on each employee that may include such information as the employee's:

❖ Job application

❖ Resume

❖ Records of training

❖ Documentation of performance appraisals

❖ Disciplinary actions

❖ Commendations

❖ Salary increases

❖ Other employment records

**Medical Information**

*All medical information relating to an employee is maintained separately from the employee's personnel file.*

## Guidelines

Personnel files are the property of Pitney Bowes and access to the information they contain is restricted. Generally, only Pitney Bowes supervisors and Human Resources professionals with a legitimate reason may review information in a personnel file.

**Special Notes**

If you wish to review your own personnel file, you may contact your Human Resources Generalist.

❖ With reasonable advance notice, you may review your own personnel file at Pitney Bowes in the presence of a supervisor or Human Resources Generalist.

❖ You may not remove any document from the file. — *Altered documents*

❖ You may add a response to any document in your personnel file. *and other missing files*

❖ You may request a copy of your file from your HR Generalist. *(including Site Mgr record not recorded)*

*( Attorney DAVIS never asked for this proof of Pitney Bowes Manager's card)*

⑤



*For updated policy information, please check the new employee portal - Inside PB - Policies & Procedures - Human Resources or contact the HR Operations Service Center at 1-800-952-5631.*

Daniel G. Atkins
[Worksite of White & Case LLP]
1155 Avenue of Americas
NYC, NY. 10036
November 17, 2010

Luis Medina
[Pitney Bowes Site Manager]
White & Case LLP
1155 Avenue of Americas
NYC, NY 10036

Dear Luis Medina;

As you might remember, I mentioned to you some time last week, that I have the need to review my personnel folder over at Human Resources. This must be done so that I may see if there is anything in it that 'should net be there". There is cause for me to believe that there is.

According to the human resources procedures, this has to be through the request of an employee to their manager, and their manager alerting human resources to have this setup by appointment for the viewing of their employment folder. An employee cannot 'just' walk in on them without prior notice. And, since I have mentioned this to you and have not gotten any response I feel that it is necessary for me to 'officially' hand you a typed notification for record. I must say that I do not trust that something bad is in my folder and I pray that there isn't anything that will disappoint me. The question of trusting that people have not put something in there is always questionable, and I must make sure that I am not surprised by any documentation place in my records that should not be there. . . I want to thank you in advance, for your help in this matter, and to say that your help is greatly appreciated in this matter.

Sincerely,

Daniel G. Atkins

*[signature]*

2010 NOV 17  A 8:06
NEW YORK, NY 10036
1155 AVE OF AMER
WHITE & CASE

DA0054



**PitneyBowes**

*Engineering the flow of communication™*

Daniel G. Atkins

has completed the initial

*Pitney Bowes Data Privacy and Information Security Training*

4/28/2006





**Pitney Bowes Legal Solutions**
**Employee Contact List**

| POSITION | LAST NAME | FIRST NAME | HOME PHONE | CELL PHONE | SHIFT | |
|---|---|---|---|---|---|---|
| COM | Anderson | Edward | 718-590-4367 | 917-309-3418 | 9am-6pm | Mon-Fri |
| COM | Kelson | Gerald | 718-367-3709 | 917-756-3429 | 3pm-11pm | Mon-Fri |
| CSTL 1st shift | Caicedo | Carlos | 718-726-3349 | 917-862-7039 | 4pm-12:30am | Mon-Fri |
| CSTL 2nd shift | Razack | F (Hassain) | 718-479-7476 | 917-658-6636 | 9:30am-6:00pm | Mon-Fri |
| CSLA Toner | Cuevas | Benny | 718-348-6000 | 718-781-6825 | 8am-5pm | Mon-Fri |
| CSLA 2nd shift | Henry | Paul | 718-712-5041 | 718-928-4508 | 4pm-12:30am | Mon-Fri |
| CSLA 1st shift | Soso | Ricardo | 718 657-8751 | 646-898-9213 | 6:30am-3pm | Mon-Fri |
| CSLA 3rd shift | Ackies | Asia (Eurasia) | 718-267-1683 | N/A | 11:30pm-8am | Mon-Fri |
| CSA | Atkins | Daniel | N/A | 301-523-5850 | 8am-5pm | Mon-Fri |
| CSA | Balbuena | Joselyn | 212-740-4569 | 646-260-4102 | 9am-5:30pm | Mon-Fri |
| CSA | Bhambhani | Mohini | 718-424-4793 | 347-610-4860 | 6:30am-2pm | Mon-Fri |
| CSA | Blount | Donte | 718-452-0752 | 646-523-9934 | 2pm-11pm | Mon-Fri |
| CSA | Brian | Colval | N/A | 917-400 6705 | 9am-6pm | Mon-Fri |
| CSA | D'Elia | Donald | N/A | 347-624-8485 | 12pm-9pm | Mon-Fri |
| CSA | Edmonds | Leonard | 718-652-6364 | 646-228-9651 | 3pm-11pm | Mon-Fri |
| CSA | Freire | C(Segundo) | 201-295-0391 | 201-275-7906 | 11am-8pm | Mon-Fri |
| CSA | Jimenez | George | N/A | 647-505-9223 | 8am-8pm | Sat and Sun |
| CSA | Johnson | Rowland | ~18-591-1525 | 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 | 12am-8am | Sun-Thur |
| CSA | Joseph | Shander | 718-526-3479 | 347-776-9723 | 2pm-11pm | Mon-Fri |
| CSA | Lewis | Cufinda | 718-299-6592 | 646-272-9416 | 8:30am-5:30pm | Mon-Fri |
| CSA | Logan | D (Philbert) | 718 257-3095 | N/A | 10am-7pm | Mon-Fri |
| CSA | McCoy | Andre | 718-881-0436 | 347-861-6970 | 12pm-9pm | Mon-Fri |
| CSA | Phelps | Ladd | N/A | 908-943-3316 | 12am-8am | Sat-Wed |
| CSA | Spencer | Yvonne | 718-716-8508 | N/A | 2pm-11pm | Mon-Fri |
| CSA | Stewart | Andrew | N/A | 917-502-3047 | 3:30pm-11pm | Mon-Fri |
| CSA | Taylor | Gloria | 718-455-3085 | 917-804-2231 | 7:30-4pm | Mon-Fri |

_Handwritten annotations:_ available; CSA to TL (BG); CSA's qualified LT never given to Dec 4.5.6(3); LOT Team Lead

3

2510



DA0108

Revised: May 2008

## Enter or Modify Time

- **Enter or Modify Time**
-
-
-

Enter or Modify Time

---

**Please confirm your time.**                                     🖶 **Print**

This ~~time record is a legal recordkeeping document and must be~~ accurate. By ~~submitting this time record and clicking YES below you are certifying~~ that you ~~have entered all time actually worked, including time worked outside~~ of your ~~regular work schedule~~. For example, if you have worked during part or all of your meal period, or performed job required training or study outside of your regular work schedule, you are certifying that you have reported this time in your time entry as time worked. ~~You understand that falsification~~ of time records is a ~~violation of Pitney Bowes policy and law~~ and may result in disciplinary action, up to and including termination.

Pitney Bowes permits you to take your unaccrued vacation, flex days and choice time up to your maximum annual eligibility amounts. However, by taking vacation/flex days/choice time before it has accrued, you agree that if you should terminate your employment having taken more vacation/flex days/choice time than you have accrued at the time of termination, your final pay will be reduced by the amount of unaccrued vacation/flex days/choice time taken. If you do not wish to have your final pay reduced, do not take more vacation/flex days/choice time than you currently have accrued.

Yes   No

← violation
standards

| **Name** | DANIEL G ATKINS |
|---|---|
| **Personnel no.** | 786442 |
| **Entry Period** | 03/27/201 to 04/02/201 |

| **My Work Schedule** | SA 03/27 | SU 03/28 | MO 03/29 | TU 03/30 | WE 03/31 | TH 04/01 | FR 04/02 |
|---|---|---|---|---|---|---|---|
| | - | - | 8 | 8 | 8 | 8 | 8 |

---

● I worked only my scheduled hours, which includes taking my entire daily meal period as personal time. 

● I worked less or more than my scheduled hours. 

| **My Exception Time** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Other Cost | Type of | | SA | SU | MO | TU | WE | TH | FR |



## Medina, Luis

**From:**  Medina, Luis
**Sent:**  Monday, April 04, 2011 1:37 PM
**To:**  'Dana Roelke'; Mayte Lopez
**Cc:**  Gerard Frazzitta
**Subject:**  RE: Daniel Atkins - urgent
**Attachments:**  DANIEL ATKINS DOC #1.pdf; DANIEL ATKINS DOC #2.pdf

For the record:

Received the attached documents from Daniel Atkins:

In reference to Daniel Atkins document dated 2/23/2011

- On 2/23/2011 @ 1pm met with Jerry Lester and Daniel Atkins in my office to discuss the incident that Daniel brought to my attention
- Daniel Atkins conveyed his concerns and Jerry Lester stated his position
- Jerry apologized to Daniel for making him feel uncomfortable
- Daniel Atkins and Jerry Lester agreed that they can work together
- Daniel Atkins and Jerry Lester shook hands
- Upon completion of their conversation I reminded them both of PB Policy re: personal space and touching persons
- I directly asked them if they wanted me to contact HR for clarification
- They both stated -NO - they are fine and requested that I remind everyone in the mailroom regarding PB Policy.
- I thanked Daniel Atkins for bringing this to my attention.
- Excused Daniel from my office and met with Jerry Lester privately in my office regarding his behavior.
- On 2/24/2011 @ 2pm I conducted a huddle reminding mailroom staff re: PB Policy with regard to personal space and touching individuals, which included but was not limited to contacting HR via hotline, ESSC, without hesitation or reservation. Daniel Atkins was present at the huddle.

I made a note to file regarding the aforementioned and have been monitoring all mailroom staff on an ongoing basis.

In reference to Daniels Atkins document dated 3/30/2011

- At no time, have I engaged in the behaviors stated by Daniel Atkins in his document.

The document dated 3/30/2011 written by Daniel Atkins is disturbing, gives credence to what my staff has brought to my attention and is consistent with the verbal threats he has made to me on 6/6/2008, 11/9/2009, 1/11/2010, 7/22/2010, 11/17/2010, 1/7/2011, 2/25/2011 that he

going to write a document to PB that will get the team leads and I fired immediately and that I had better watch my back as there is nothing I can do because all our conversations were in private  "he said she said".

Daniel threats made to me consisted of the following:

1.  Accusing me of participating in a white PB conspiracy against him so he would not receive what is owed to him for past injustices and he is going to report me to PB HR

2.  That I and my team leads are writing secret documents to PB using false lies to stop him from getting any money from PB and he is going to report us all to PB HR

3.  That I worked in collusion with Mayte Lopez in making sure he did not get all his documents in his personnel file and he is going to report me to HR to get me fired since I am the white person involved

4.  That he is going to draft a document to PB to make certain that I and my team leads are fired. Daniel stated they will believe him because he is a pastor in training and I am just a godless white guy in charge. Besides an African American should be in charge preferably a Christian.

5.  That he is going to advise the client of the corrupt PB leadership that is at the work site and also contact PB HR

6.  I have caused him from getting promoted and have written negative letters to the area director about him and he is going to report me to HR

7.  He is making plans on suing PB before retirement age for past injustices and if I or my corrupt team leads get in his way he will get all of us fired by reporting us to PB HR

In each instance I thanked Daniel for his comments and directed him to not hesitate to contact PB HR. I made note to file of his comments. At no time in the last three years have I received any information from PB HR, outside counsel, my client and/or PB Legal regarding his allegations and/or his accusations. I made note to file of the aforementioned statements.

**Recently, my staff brought to my attention the behavior of Daniel Atkins including the threat of suing PB, myself and derogatory comments regarding my skin color coupled with his document #2 which clearly indicates his intentions to make good on his threats.**

At this juncture returning Daniel Atkins back to the work site will create an adversarial, hostile work environment for all persons at the site due to the fact that Daniel Atkins is threatening the livelihood of various employees and is apparently doing so publicly and now in written form.  I am concerned for the safety of my staff, the client's employees, myself and the possibility of violence erupting at the site.

2

EEOC Form 5 (11/09)   Case 1:12-cv-05575-UA   Document 2   Filed 07/16/12   Page 15 of 73

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA | |
| | | ☒ EEOC | 520-2012-01211 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Daniel Atkins | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| P.O. Box 0582, | New York, NY 10016 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PITNEY BOWES MANAGEMENT/ White & Case, LLP | 500 or More | (917) 351-2919 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1 Penn Plaza, | New York, NY 10116 | |

R E C E I V E D
FEB 0 7 2012
EEOC-NYDO-CRTIU

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| ☐ RACE   ☐ COLOR   ☐ SEX   ☒ RELIGION   ☐ NATIONAL ORIGIN | 11/2010 | 1/30/2012 |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have worked for Pitney Bowes Management at White & Case, LLP since March 1990 as a Customer Associate.

After I objected to a negative religious comment made by a supervisor, I was permanently assigned to the mailroom and subject to harassment. I believe this transfer was an unfair assignment and I was subsequently terminated.

I believe I was subject to discrimination based on race and religion and retaliated against in violation of the Civil Rights Acts of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | *Daniel G. Atkin* |
| Feb 07, 2012          *Daniel G. Atkins* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

DA0011

**::PitneyBowes** *Engineering the flow of communication™*

## Development Plan
Please complete the following section for DANIEL ATKINS

**Significant Strengths (Indicate what the employee does best ... the 1 or 2 most valuable behaviors demonstrated on the Job)**

**LUIS MEDINA:**
**Comments:** *Daniel is reliable and can be counted on to complete any task given to him. He is always willing to assist customers and interacts with them in a professional manner at all times.*

**Areas of Development**

**LUIS MEDINA:**
**Comments:** *Daniel is to cross train on production equipment and provide assistance to the team as needed during high volume priority productions.*

**Action Plan for Development (Include time periods for completion and follow up review**

**LUIS MEDINA:**
**Comments:** *Daniel is to begin his cross training on August 1, 2008. Management will measure performance regarding contribution to the team on 9/30/08. A meeting will be scheduled to discuss performance.*

Annual Performance Appraisal: Non Exempt
DANIEL ATKINS

**Pitney Bowes** *Engineering the flow of communication™*

# Overall Score: 3

## Review Score Summary Details

Employee may provide comments regarding this review on an attached sheet.

Upon obtaining signature from the employee, forward the original document confidentially to File Imaging Project, MSC 27-1FA, 27 Waterview Drive, Shelton, CT 06484.

**Annual Performance Review Signatures**

Employee Signature Daniel J. Atkins Date July 15, 2008

Manager Signature Date 7/5/08

| 12 of 12 7/8/2008 | | Annual Performance Appraisal: Non Exempt DANIEL ATKINS |

July 14, 2008

To Whom This Review Status May Concern:

        I want to thank Mr. Luis Medina for the employment review for the time period of dates covering from last June (of 2007) and this previous June (of 2008). For the most part of this time I was under the management of Mr. Mark Whitely. I am glad that Luis has taken the time to have this review of my employment of this period done. I thank him greatly. But, even though he has done so I reject the rating (that of 3), as it amounts to the rating of someone with limited amount of skills sets in a very low employment position. After eighteen years of employment I would think that I would have received a better rating from this basement level position. This does not have any reflection on Luis Medina or Mark Whitley.

 Much has happened to me (especially in the last six to seven years of employment with this employer), and I have seen much of the same happen to other persons in it's' employ. I m not surprise of what I am experiencing; but it doesn't surprise me the least it won't stop anytime soon.

This should not be seen to reflect my feelings about the way Luis has been managing his department, because he (and Mark) has been the first set of managers that have come here with a sense of integrity. Both have good skill sets that will help the department and company to grow. Luis has some great production skills that have been needed for some time, in this department, and he is (as Mark was) a breath of fresh air.

 I have signed the document, of review, because it only represents what Luis has only seen of my work experience around his shop of operation. It is not intended to have you believe that I agree totally with the assessment of my abilities and skills. It is intended to make sure that I don't draw a wedge between his ability to run a department and my ability to work with him at doing the same as long as I am here. So, on this day (June 14th, 2008) I have make the previous statement that I have signed this document for the purpose of making sure that I acknowledge receiving the ratings from Luis (and possibly Mark) as what they feel is so about me. It doesn't, by

July 14, 2008

To Whom This Review Status May Concern:

I want to thank Mr. Luis Medina for the employment review for the time period of dates covering from last June (of 2007) and this previous June (of 2008). For the most part of this time I was under the management of Mr. Mark Whitely. I am glad that Luis has taken the time to have this review of my employment of this period done. I thank him greatly. But, even though he has done so I reject the rating (that of 3), as it amounts to the rating of someone with limited amount of skills sets in a very low employment position. After eighteen years of employment I would think that I would have received a better rating from this basement level position. This does not have any reflection on Luis Medina or Mark Whitley.

Much has happened to me (especially in the last six to seven years of employment with this employer), and I have seen much of the same happen to other persons in it's' employ. I m not surprise of what I am experiencing; but it doesn't surprise me the least it won't stop anytime soon.

This should not be seen to reflect my feelings about the way Luis has been managing his department, because he (and Mark) has been the first set of managers that have come here with a sense of integrity. Both have good skill sets that will help the department and company to grow. Luis has some great production skills that have been needed for some time, in this department, and he is (as Mark was) a breath of fresh air.

I have signed the document, of review, because it only represents what Luis has only seen of my work experience around his shop of operation. It is not intended to have you believe that I agree totally with the assessment of my abilities and skills. It is intended to make sure that I don't draw a wedge between his ability to run a department and my ability to work with him at doing the same as long as I am here. So, on this day (June 14th, 2008) I have make the previous statement that I have signed this document for the purpose of making sure that I acknowledge receiving the ratings from Luis (and possibly Mark) as what they feel is so about me. It doesn't, by

any way, say that I approve of the rating. Let this statement be known to all that read this memo.

Thank you for your cooperation in this matter.

Respectfully yours,

Daniel G. Atkins

**Pitney Bowes** *Engineering the flow of communication™*

## Values - Foundational Competencies Summary:

**Rating Scale**

| RATING | DESCRIPTION |
|---|---|
| Always | Demonstrates Foundational Competency substantially and consistently exceeds standards |
| Regularly | Demonstrates Foundational Competency routinely and usually exceeds standards |
| Often | Demonstrates Foundational Competency as a standard practice and meets expectations |
| Seldom | Demonstrates Foundational Competency only occasionally or at a level below standard |
| Never or almost never | Fails to demonstrate Foundational Competency at the expected level or expected frequency |

### PB Values-Foundational Competencies Rating:

**Luis Medina:**

Rating: 2 - Regularly

### PB Values-Foundational Competencies Manager Comments:

**Luis Medina:**

**Comments:**
Daniel acknowelges PB Values and consistently adheres to them when performing his employment funcstions.

**Pitney Bowes** Engineering the flow of communication

## Values - Foundational Competencies Summary:

| RATING | DESCRIPTION |
|---|---|
| Always | Demonstrates Foundational Competency substantially and consistently exceeds standards |
| Regularly | Demonstrates Foundational Competency routinely and usually exceeds standards |
| Often | Demonstrates Foundational Competency as a standard practice and meets expectations |
| Seldom | Demonstrates Foundational Competency only occasionally or at a level below standard |
| Never or almost never | Fails to demonstrate Foundational Competency at the expected level or expected frequency |

**Rating Scale**

### PB Values-Foundational Competencies Rating:

**Luis Medina:**

   **Rating: 2 - Regularly**

### PB Values-Foundational Competencies Manager Comments:

**Luis Medina:**

   **Comments:**
   Daniel acknowelges PB Values and consistently adheres to them when performing his employment funcstions.

Anniversary Non-Exempt Annual Performance Appraisal
DANIEL ATKINS

PitneyBowes   Engineering the flow of communication™

## Anniversary Non-Exempt Annual Performance Appraisal

Review Period: 6/16/2008 - 6/16/2009

**Before you start please take a moment to read the following instructions:**

**Performance Appraisal Process:**
1. At the beginning of the review cycle, the manager outlines in a clear and concise manner the key responsibilities and specific objectives (if applicable).
2. The employee and manager meet to discuss the expected performance for each key responsibility and specific objective.
3. Approximately six months into the review cycle, an informal review should be conducted utilizing this performance appraisal form. At that time, the employee and supervisor meet to review and discuss the employee's progress. Communication, coaching and feedback should be occurring regularly throughout the year.
4. At the end of the review cycle, this appraisal form is prepared and signed by the manager and forwarded to the next level of management for review.

You will need to complete all the sections of the performance review before it can be submitted. The indicator light to the left of each section represents the following:

**Red** - Indicates not started.
**Yellow** - Indicates started but not completed.
**Green** - Indicates completed.
**No Light** - Indicates no action needed.

**Important note:**
Once you click on the "SUBMIT" button you will not be able to go back in and edit/change the review as it will be submitted. It is strongly recommended that you save and print the performance review just before submitting to ensure clocks request before final submission.



## Employee Details

| | |
|---|---|
| **Full Name** | DANIEL ATKINS |
| **Position** | CUST SERV ASSOC |
| **Band** | A |
| **Organization** | US_WHITE & CASE COPY(Luis Medina) |
| **Personnel Number** | 00786442 |
| **Manager** | Luis Medina |
| **Position Start Date** | 2006-12-26 |

Pitney Bowes

## Key Responsibilities Overall Rating

### Rating Scale

| RATING | DESCRIPTION |
|---|---|
| Far Exceeds | Performance substantially and consistently exceeds standards. Both the quality and quantity of work far exceeds standards. Does a superior job of responding to unusual or unanticipated issues. Significant examples of outstanding performance on specific assignments, including significant innovations, revenue achievements, or cost savings. |
| Exceeds | Performance routinely exceeds standards. Both the quality and quantity of work typically exceed standards. Does an above expectations job of responding to unusual or unanticipated issues. Significant examples of above expectation performance on specific assignments. |
| Succeeds | Performance is at or occasionally above average and meets expectations in most respects. Level of accomplishment reflects a medium-to-high degree of proficiency. Meets, and occasionally surpasses, acceptable completion of established goals and timetables. Show initiative at expectation in most aspects of the job. |
| Developing/Needs Improvement | Job performance is occasionally below the expected level. Quality and/or quantity of work fall modestly below standards. Fails to achieve one or more objectives without adequate explanation of justification. Occasionally requires more supervision and support than should be necessary for specified position and level. May be appropriate for employee learning new position. |
| Did Not Achieve | Job performance is substantially below the expected level. Fails to achieve majority of objectives without adequate explanation or justification. Requires more ongoing supervision and support than should be necessary for specified position and level, taking into account time in position and prior experience. |

### Key Responsibilities Overall Rating

**Luis Medina:**

**Rating: 2 - Exceeds**

### Key Responsibilities Manager Comments:

**Luis Medina:**

**Comments:**
Daniel provides excellent service to the customer and participates effectively with the team in meeting departmental goals.

 **PitneyBowes**

## Values - Foundational Competencies Summary:

| RATING | DESCRIPTION |
|--------|-------------|
| Always | Demonstrates Foundational Competency substantially and consistently exceeds standards |
| Regularly | Demonstrates Foundational Competency routinely and usually exceeds standards |
| Often | Demonstrates Foundational Competency as a standard practice and meets expectations |
| Seldom | Demonstrates Foundational Competency only occasionally or at a level below standard |
| Never or almost never | Fails to demonstrate Foundational Competency at the expected level or expected frequency |

### PB Values-Foundational Competencies Rating:

**LUIS MEDINA:**
Rating: 2 - Regularly

### PB Values-Foundational Competencies Manager Comments:

**LUIS MEDINA:**
Comments:
Daniel adheres to PB values.



## A Recommended Overall Annual Performance Appraisal

**Rating Scale**

| Rating | Description |
|---|---|
| Far Exceeds | Performance substantially and consistently exceeds standards. Both the quality and quantity of work far exceeds standards. Does a superior job of responding to unusual or unanticipated issues. Significant examples of outstanding performance on specific assignments, including significant innovations, revenue achievements, or cost savings. |
| Exceeds | Performance routinely exceeds standards. Both the quality and quantity of work typically exceed standards. Does an above expectations job of responding to unusual or unanticipated issues. Significant examples of above expectation performance on specific assignments. |
| Succeeds | Performance is at or occasionally above average and meets expectations in most respects. Level of accomplishment reflects a medium-to-high degree of proficiency. Meets, and occasionally surpasses, acceptable completion of established goals and timetables. Show initiative at expectation in most aspects of the job. |
| Developing/Needs Improvement | Job performance is occasionally below the expected level. Quality and/or quantity of work fall modestly below standards. Fails to achieve one or more objectives without adequate explanation of justification. Occasionally requires more supervision and support than should be necessary for specified position and level. May be appropriate for employee learning new position. |
| Did Not Achieve | Job performance is substantially below the expected level. Fails to achieve majority of objectives without adequate explanation or justification. Requires more ongoing supervision and support than should be necessary for specified position and level, taking into account time in position and prior experience. |

**Overall Performance Rating:**

LUIS MEDINA:

Rating: 3

**Overall Performance Manager Summary:**

LUIS MEDINA:

Daniel performs his employment functions of picking up and delivering materials at an acceptable level and is prompt.

**Employee Strengths:**

LUIS MEDINA:

Daniel is a solid associate whose strengths include include internal messenger runs and priority messenger runs.

**Career and Performance Development Plan for the Next 12 Months:**

LUIS MEDINA:

Daniel is to improve his punctuality. Through June 10, 2011 Daniel has been tardy on twenty seven occassions ( see attached).

**Employee Comments:**

Rv 2 od1 (G)

**⫼ PitneyBowes**

## Core Competencies Summary

**Rating Scale**

| Rating | Description |
|---|---|
| Extremely Effective | Demonstrates competency substantially and consistently exceeds standards. |
| Highly Effective | Demonstrates competency routinely, and usually exceeds standards. |
| Effective | Demonstrates competency routinely and effectively. |
| Somewhat Effective | Demonstrates competency occasionally and / or is currently developing. |
| Ineffective | Fails to demonstrate competency at the basic level. |

**PB Core Competencies Rating:**

LUIS MEDINA:

Rating: 3

**PB Core Competencies Manager Comments:**

LUIS MEDINA:

Daniel adheres to PB Values.

 **Pitney Bowes**

## Core Competencies Summary

**Rating Scale**

| Rating | Description |
|---|---|
| Extremely Effective | Demonstrates competency substantially and consistently exceeds standards. |
| Highly Effective | Demonstrates competency routinely, and usually exceeds standards. |
| Effective | Demonstrates competency routinely and effectively. |
| Somewhat Effective | Demonstrates competency occasionally and / or is currently developing. |
| Ineffective | Fails to demonstrate competency at the basic level. |

### PB Core Competencies Rating:

**LUIS MEDINA:**

Rating: 3

### PB Core Competencies Manager Comments:

**LUIS MEDINA:**

Daniel adheres to PB Values.

RV 2011 (F)

**Pitney Bowes**

## CAP Counseling
Please select "YES" or "NO" from the drop down list if DANIEL ATKINS is Current counseling and/or CAP on file in the last 12 months.

**Rating Scale**

| Rating | Description |
|--------|-------------|
| YES | Yes |
| NO | No |

**Current counseling and/or CAP on file in the last 12 months. Please Select (YES) or (NO).**

LUIS MEDINA:

Rating: 2

RV 2011 (H)

 **Pitney Bowes**

**Obtain Signatures**

Manager needs to print review and meet with  the employee.

For **US Managers <u>ONLY</u>**:

Upon obtaining signature from employee, forward the original signed document confidentially to:

**Pitney Bowes HR File Imaging MSC 27-1FA, 27 Waterview Drive, Shelton, CT 06484**

**Employee** _____

**Manager** _____

$RV\ 2011\ (I)$

2011 Anniversary Annual Performance Appraisal
DANIEL ATKINS

## View Employee Time Entry History Report

- **View Employee Time Entry History Report**
- 
- 

View Employee Time Entry History Report

● **Direct Report**  ○ **Indirect Report**                                    🖶 **Print**

---

| Filter by: Employees | ATKINS,DANIEL ▼ | Exceptions | Tardy No Pay ▼ |
|---|---|---|---|

**Select Period**   [01/03/2011] 📅 **to** [06/17/2011] 📅 ■

Export to Excel 

Totals   **Details**

| Exception | Date | # of Times | Hours | WorkSchedul | Cost Center | Comment |
|---|---|---|---|---|---|---|
| **ATKINS,DANIEL 00786442** | | | | | | |
| Tardy No Pay | 01/24/20 | 1 | 0.04 | 40:5X8M,T,W, | | |
| Tardy No Pay | 01/26/20 | 1 | 0.01 | 40:5X8M,T,W, | | |
| Tardy No Pay | 01/27/20 | 1 | 0.02 | 40:5X8M,T,W, | | |
| Tardy No Pay | 01/28/20 | 1 | 1.03 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/04/20 | 1 | 0.5 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/09/20 | 1 | 0.2 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/10/20 | 1 | 0.1 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/15/20 | 1 | 0.2 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/17/20 | 1 | 0.3 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/22/20 | 1 | 0.3 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/23/20 | 1 | 0.5 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/24/20 | 1 | 0.1 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/25/20 | 1 | 0.1 | 40:5X8M,T,W, | | |
| Tardy No Pay | 02/28/20 | 1 | 0.3 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/02/20 | 1 | 0.1 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/07/20 | 1 | 0.4 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/09/20 | 1 | 0.1 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/11/20 | 1 | 0.4 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/14/20 | 1 | 0.6 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/21/20 | 1 | 0.1 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/22/20 | 1 | 0.4 | 40:5X8M,T,W, | | |
| Tardy No Pay | 03/24/20 | 1 | 0.1 | 40:5X8M,T,W, | | |
| Tardy No Pay | 05/11/20 | 1 | 0.2 | 40:5X8M,T,W, | | |
| Tardy No Pay | 05/13/20 | 1 | 0.4 | 40:5X8M,T,W, | | |
| Tardy No Pay | 05/24/20 | 1 | 0.8 | 40:5X8M,T,W, | | |

*[Handwritten notes in right margin: "Due 8:00 Am  8:03 on)  TARDY at 0.1  RV 2011 (J)"]*

Case 1:12-cv-05575-JGK-KNF   Document 83   Filed 12/23/13   Page 48 of 97

| Tardy No Pay | 05/25/20 | 1 | 0.1 | 40:5X8M,T,W, | |
| Tardy No Pay | 05/26/20 | 1 | 0.1 | 40:5X8M,T,W, | |
| Tardy No Pay | 06/14/20 | 1 | 0.1 | 40:5X8M,T,W, | |
| Tardy No Pay | 06/15/20 | 1 | 0.1 | 40:5X8M,T,W, | |
| Tardy No Pay | 06/16/20 | 1 | 0.1 | 40:5X8M,T,W, | |
| Tardy No Pay | 06/17/20 | 1 | 0.3 | 40:5X8M,T,W, | tardy |
| Total TRDY | | 31 | 8.10 | | |

31, not 87 as
stated

Rv2011 (K)


**Pitney Bowes**
ngineering the flow of communication

### EMPLOYMENT TERMINATION REVIEW REQUEST FORM

| EMPLOYEE NAME<br>Daniel G. Atkins | PERSONNEL NUMBER<br>00786442 | DATE OF HIRE<br>6/7/1990 | DATE PREPARED<br>01/19/12 |
|---|---|---|---|
| PERSONNEL ARE<br>PBLS | POSITION<br>CSA | PREVIOUS COUNSELING & CAPS ON FILE<br>Documented Verbal 08/11/2011<br>Written Warning 10/19/2011<br>Final Warning 1/03/2012 | |

**NATURE OF PROBLEM:**

☐ JOB PERFORMANCE    X CONDUCT    ☐ ATTENDANCE/LATENESS

☐ OTHER

PREVIOUS COUNSELING & CAPS ON FILE (NOTE DATES & TYPE OF DISCUSSION – ATTACH DOCUMENTS):

See Attached documents to this request.

DESCRIBE NATURE OF ISSUE – ATTACH SUPPORTING DOCUMENTATION

### Insubordination – Failure to Comply with Management request to complete:

1. PBMS Annual Data Privacy Certification Training: An Introduction to Data Privacy and Information Security
2. Inside Ethics

Revised 10/1/05

6.


**Pitney Bowes**
*Engineering the flow of communication~*

### EMPLOYMENT TERMINATION REVIEW REQUEST FORM

| COMPANY STANDARD/POLICY: |
| --- |
| (Please see PB Web or HR Access for the latest version of HR Policy and refer accurately to that policy here. |

PBMS/PBGS personnel are required to complete PBMS Annual Data Privacy Certification Training and Inside Ethics on a yearly basis.

The following is from a PBMS Field Communications:

"Beginning in August 2011, all PBMS/PBGS personnel will be required to complete the yearly requirement for An Introduction to Data Privacy and Information Security: U.S. 2009. As part of the corporate initiative to ensure that all our employees are certified annually, it was decided that each August, a full rollout of the training would occur. With many challenges and new proposed legislation around a company's responsibility to protect their data and the data of their customers, this effort is critical. "

Inside Ethics training is a requirement for all PBMS/PBGS employees and such is placed in each employees Inside PB task list to complete.

The following is from the Inside Ethics training task:

"The modern workplace poses some difficult ethical challenges. When you are presented with situations where the right course of action may not be immediately clear, the Business Practices Guidelines are there to provide guidance for every employee to follow. This online course reviews the following: What the Business Practices Guidelines are and why they are important, The various Company policies and legal requirements for employee conduct, Available resources and appropriate procedures for seeking advice or reporting concerns about matters of policy or the law."

*Supervisors - was ecertified?*

*Disparate Treatment*

*Supervisors 'not' fired. (per say)*

Revised 10/1/05



August 18, 2011

**PBMS Annual Data Privacy Certification Training: An Introduction to Data Privacy and Information Security: U.S. 2009**

****Please note: the title of this training course includes the year 2009.  This is the correct course.**

Beginning in August 2011, all PBMS/PBGS personnel will be required to complete the yearly requirement for **An Introduction to Data Privacy and Information Security: U.S. 2009.** As part of the corporate initiative to ensure that all of our employees are certified annually, it was decided that each August, a full rollout of the training would occur.  With many challenges and new proposed legislation around a company's responsibility to protect their data and the data of their customers, this effort is critical.

On August 1, 2011, all employees were registered for the training in My Portfolio.   You can access the training from the Home Page or the Learning Tab in My Portfolio.

due
Mon 8/22/11

DA0012

October 5, 2010

TO: Luis Medina
FROM: Brian Colvil
RE: Daniel Atkins

Louis,
Today Daniel was talking on his cell phone upstairs in the lobby. As I approached him I heard him telling someone that "My site is filled with disrespectful leadership that discriminates against gays, blacks, people with accents and women". As I approached him he quickly hung up his phone and returned downstairs. This is not the first time he has engaged in this type of talk. I also heard him at the coffee machine telling a White & Case employee of the record department that his site has a white devil there and its management is lacking any minority leadership. He also stated that the leadership of this site does not know what its doing.
He has criticized my supervisory position by telling staff members that he is treated like a "beast of burden" by making him do the heavy lifting tasks. He is our site messenger his responsibilities are to deliver boxes of printed work to our clients.
When I ask him to delay his lunch to deliver a rush job he'll tell me "I'm going to lunch, get someone else" and he just walks away. He does not acknowledge me as his supervisor. I find it difficult if not impossible to approach him due to his lack of respect for my position.
On 9/30/10 Daniel had requested to leave early. It was not marked on the calendar so I was not aware of his early departure. At 3:00 pm he came to the back area, changed his shirt and as he was leaving I asked him where he was going. He did not answer me and left the site. It was only later did I find out he was approved. The point is that he would not answer me. If I had a rush delivery he would have just walked out and not told his supervisor he was leaving.
I have had enough with his behavior. I need to take actions to document this behavior patterns and report them to you. I will document them as they occur and recommend write-ups to you on all his inappropriate actions.

Thank You,
Brian Colvil

DA0118
DA0048

2010 OCT -6  A 7 59



To the readers of this letter     (Response)

10/06/2010

Yesterday (October 06, 2010), I discovered (as I survey the cabinet top behind where Brian Covil's computer is located) a memo from Brian Covil, concerning allegations toward me (Daniel Atkins). I might want to say that I am shocked; but I am not surprised at his attics. These allegations are false, and slanderous. I would say that he is prejudice now, and a liar. I once disowned this position and said that he just had an axe to grind with me ever since he made that comment about Jesus Christ being gay., but this goes far beyond the scope.

 I am saddened to see that he has taken out a personal vendetta out against me, and to see that everyone sees this and says nothing. He shows that he has some prejudice issues that I had always suspected (and, as I have said, but I could not hold to until now). Even though I have written to Luis Medina (in the past) it seems as though nothing real has been done. I am sad to see that lies (as written in this notice) hurts me and can be believed after all that I have been through with this employer. And, it also threaten to bother the clients employees also (being White & Case LLP).Something has to be done against this type of attack. I have tried to notify Luis Medina about his attitude (from Mr. Covil) toward people (which has included my co-workers) at this site on other occasions (to no avail). And it seems like I am the main target of his fierce temper and attack. He always bad talks about people, and now he has assigned himself to be in control over me and my motives throughout my life. I have been here before (Washington DC – and Scott Mackey). Most, of what he writes in this memo are lies and that can be substantiate through the review of time cards and by speaking to other people in the firm (which he is threatening to have done).

 He is in the process of damaging my reputation (as Pitney Bowes' managers have done before). I am not going to take this anymore. They (Pitney Bowes Inc. cannot protect me from this type of attack, and it seems like their only means of doing business with me is to make sure that I never live a peaceful life. Too much is too much. Fair is fair and I have not had a fair handshake in this matter every since 1993. This company shows that it is bias and cannot look out for its employees (especially African American employees)

DA0053

**Daniel Atkins**

Date: 2/20/2001

TO: All PBMS Non-Exempt Employees

SUBJECT: Guidelines for Time Card Use

All hourly (non-exempt) employees are required to accurately record their hours worked on a time card. The following procedures will be strictly enforced!

- Only you may "punch in" your time card.

- If your going to work more than your scheduled hours, it must be authorized by your supervisor or manager and annotated on your time card at the end of each shift. In addition, the supervisor or manager who approved the additional hours must annotate on the back of the time card the reason and who approved it.

- Employees will "punch in" at the beginning of their shift, "punch out" at the beginning of their lunch break, "punch in" at the end of their lunch break, and "punch out" again at the end of each day. At no time will an employee write their times on the time card or make any other alterations to the time card.

- Only supervisors and managers may make corrections to a time card.

- Employees are required to take a minimum unpaid 30-minute lunch break.

- If you forget to "punch in" or "punch out" during the day, you must have your supervisor or manager annotate the time card by the end of the shift.

- At the end of the pay period you must sign your time card.

- Falsification of time records may be grounds for immediate termination.

I understand my responsibilities in regards to using my time card.

_____
Employee Signature

PB 00047

EDWARDS WILDMAN PALMER LLP
Rory J. McEvoy
Julie L. Sauer
Attorneys for Defendants
750 Lexington Avenue
New York, New York 10022
212.308.4411
rmcevoy@edwardswildman.com
jsauer@edwardswildman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

DANIEL ATKINS,

               Plaintiff,

      -against-

PITNEY BOWES MANAGEMENT SERVICES,
et al.,

              Defendants.

───────────────────────────────

12 Civ. 5575 (JGK) (KNF)

**DECLARATION OF
DANA ROELKE**

    DANA ROELKE, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

    1.    I am a Human Resources Manager for Pitney Bowes, Inc. and I am fully familiar with this proceeding as well as the specific matters set forth herein based upon my personal knowledge and information contained in documents in the files of Pitney Bowes, Inc.  I make this declaration in support of Defendants' motion to dismiss parts of the Second Amended Complaint or, in the alternative, for partial summary judgment, and for a more definite statement.

    2.    PBMS is a wholly owned subsidiary of Pitney Bowes, Inc., which is a manufacturer of mail-related products and services that provides software, hardware and services to businesses to help them manage document workflow and improve shipping and mailing performance.  PBMS provides people and equipment to manage warehouses, mailrooms, copy

centers, conference room set-ups, and other administrative needs to customers, which choose to

outsource their office services and administrative functions.  PBMS also provides on-site

Facilities Management services for businesses all over the country, including many large

international law firms.

   3.  Daniel Atkins ("Plaintiff" or "Atkins") began working for PBMS on June 7, 1990

as a Site Operator.  From January 2003 until his termination on January 19, 2012, Plaintiff held

the position of Customer Service Associate.

   4.  During his employment with PBMS, Plaintiff worked in the mailroom of several

law firms, including Piper Marbury Mudnick & Wolfe from 1993 to 1994; Morgan Lewis &

Bockius from 1994 to June 1996; Moore & Van Allen LLP from September 1996 to 1997;

Finnegan Henderson Farabow Garrett & Dunner LLP from January 1998 to October 2004;

Dewey Ballantine LLP from January 2005 to October 2005; Cadwalder, Wickersham & Taft

LLP from October 2005 to December 2006; and White & Case LLP from December 2006 to

January 19, 2012.

   5.  On December 26, 2006, Atkins was transferred to and began working in the

mailroom of White & Case LLP's New York City office.  Plaintiff worked in this mailroom until

his discharge on January 19, 2012.

   6.  In August 2011, PBMS instituted the following annual online mandatory training

of all PBMS personnel: (i) PBMS Annual Data Privacy Certification Training: An Introduction

to Data Privacy and Information Security and (ii) Inside Ethics.  This training is necessary to

protect PBMS' client data and ensure that PBMS employees are prepared to deal with difficult

ethical situations that may arise in the workplace.  In addition, PBMS employees are also

required to complete the Data Privacy and Information Security training because of a contractual obligation between PBMS and many of its clients.

7.  All PBMS employees receive an email communication from the electronic repository, which notifies employees of the deadline to complete the training. In addition, managers notify employees of the training and emphasize its importance.

8.  On August 11, 2011, I was copied on an email from Plaintiff's manager, Luis Medina ("Medina") to Mayte Lopez ("Lopez"), a Human Resources Generalist for PBMS, which explained that on August 9 and 10, 2011, two teamleads, Iris Santiago ("Santiago") and Shakela Houssain ("Houssain") spoke to Plaintiff and reminded him to complete the Data Privacy and Information Security training. According to this email, Houssain offered to make a computer available to Plaintiff if he needed one and to assist Plaintiff with the work flow to allow him to complete the training. Despite their efforts, Plaintiff told Houssain that he would not do the training. In addition, according to this email, Medina met with Plaintiff and asked him why he refused to complete the training. Plaintiff responded by saying "I refuse to do it at this time as it might affect something I am doing down the line . . . ." A copy of the email from Luis Medina to Mayte Lopez, Gerard Frazzitta and Dana Roelke, dated August 11, 2011, is Exhibit 1 hereto.

9.  Plaintiff continued to refuse to complete the training. On October 19, 2011, Plaintiff met with Medina and was issued a written warning for insubordination. Medina informed Plaintiff that if he did not complete the required training within thirty days, he would be subject to further disciplinary action. A copy of the Corrective Action Process (CAP) Form for Plaintiff's First Written Warning, dated October 19, 2011, is Exhibit 2 hereto.

10.  After the October 19 meeting, Lopez met with Plaintiff and asked him why he refused to complete the training. Plaintiff told Lopez that he did not want the training to cause

3

any "possible legal issues" for him or "hurt him down the road." Lopez assured Plaintiff that there would be no negative consequences if Plaintiff completed the training and explained to him that all PBMS personnel are required to complete the training. In addition, Lopez told Plaintiff that he would be disciplined, up to and including termination, if he did not complete the training.

11.     Plaintiff failed to complete the training within thirty days of the October 19 meeting and was issued a final warning for insubordination on January 3, 2012. The final warning instructed Plaintiff to complete the required training within five business days or he would be subject to further disciplinary action. A copy of the Corrective Action Process (CAP) Form for Plaintiff's Final Written Warning, dated January 3, 2012, is Exhibit 3 hereto.

12.     That week, Lopez met with Plaintiff again to emphasize the importance of the training, but was unable to persuade Plaintiff to complete the training. Lopez also explained to Plaintiff that he would be discharged if he did not complete the training.

13.     Plaintiff failed to complete the training within five business days and his employment was terminated on January 19, 2012. A copy of the Employment Termination Review Request Form, dated January 19, 2012, is Exhibit 4 hereto.

Dated: New York, New York
          November 16, 2012

Dana Roelke

4

23-OCT. 98.

**SOCIAL SECURITY NUMBER** 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   **EFFECTIVE DATE** May 18, 1991

EMPLOYEE NAME (FIRST/MIDDLE/LAST)
Daniel Atkins

**CHANGE REASON**

LEAVE OF ABSENCE

| | |
|---|---|
| ☐ PERSONAL | |
| ☐ MILITARY | |
| ☐ CIVIC | |
| ☐ RETURN FROM LEAVE | |

**DISABILITY**
- ☐ LONG TERM DISABILITY
- ☐ RETURN FROM LTD

**CHANGE IN PAY RATE (CHECK ALL WHICH APPLY)**
- ☒ PROMOTION
- ☐ MERIT
- ☐ FIRST SENIORITY
- ☐ TRANSFER
- ☐ RECLASSIFICATION / RE EVALUATION
- ☐ ADJUSTMENT
- ☐ SECOND SENIORITY
- ☐ SAME RELATIVE POSITION POLICY

**NO CHANGE IN PAY RATE**
- ☐ PROMOTION
- ☐ RECLASSIFICATION / RE EVALUATION
- ☐ TRANSFER

CORRECTION TO PREVIOUS PCA, CHECK HERE
☐ CORRECTION

IF TRANSFER, CHECK APPLICABLE BOX BELOW
☐ COMPANY EXPENSE   ☐ EMPLOYEE EXPENSE

IF TRANSFER, CHECK APPLICABLE BOX BELOW
☐ COMPANY EXPENSE   ☐ EMPLOYEE EXPENSE

**CURRENT STATUS**

**CHANGE TO**

DIVISION
PBMS

DEPARTMENT/REGION
Field Ops/Northeast

DIST. CODE
103120

DIVISION

DEPARTMENT/REGION

SECTION/BRANCH AND DISTRICT NAME
DC

COST CENTER
103120

SECTION/BRANCH AND DISTRICT NAME

DIST. CODE
228030

COST CENTER
228030

TELEPHONE NO.
(202) 223-2230

LOCATION Bldg A

TELEPHONE INFO
☐ NEW PHONE REQUIRED   ☐ USING EXISTING PHONE

LOCATION Bldg B

JOB TITLE
2K - Cust Asst/Key Op

CLOCK NUMBER
Grade 4

JOB TITLE
SA - Site Operator A

CLOCK NUMBER
Grade 6

☒ NON-EXEMPT   ☐ EXEMPT

SHIFT 1   SCHEDULED HOURS 40

☐ NON-EXEMPT   ☐ EXEMPT

SHIFT   SCHEDULED HOURS

☒ PERMANENT   ☐ TEMPORARY

☐ PERMANENT   ☐ TEMPORARY

☒ FULL TIME   ☐ PART TIME   ☐ ON CALL

☐ FULL TIME   ☐ PART TIME   ☐ ON CALL

RATE OR SALARY
366 80

PER (HOUR/WEEK/YEAR, ETC.)
week

RATE OR SALARY
412 22

PER
week

PERCENT INCREASE
12.5%

OTHER COMP. TYPE
9¹⁷/hour

OTHER COMP. AMOUNT   MERIT RATING (FACTORY)

OTHER COMP. TYPE
10³²/hour

OTHER COMP. AMOUNT   MERIT RATING (FACTORY)

**LEAVE OF ABSENCE**
FROM (DATE)   THROUGH (DATE)

**COMMENTS**   Security cost center: 103100
promo grade 4→5   6.0%
5→6   6.5%
TOTAL   12.5%

replacing: Darren McKinney
DNR 1/12/92

**ADMINISTRATIVE**

LAST INCREASE DATE
1/12/91

CURRENT COMPARATIO
118%

PERFORMANCE RATING AND DATE
4

ADJUSTED SENIORITY DATE
3/12/90

CURRENT RANGE
6.22 - 7.77 - 9.33

NEW RANGE
7.83-9.79 - 11.75

ATTENDANCE
—

☐ PAY EXCEPTION

NAME

MAIL LOCATION

REMOVE ORIGINATOR'S COPY AND IDENTIFY TO WHOM ALL
CONFIRMED COPIES ARE TO BE SENT ➔

**APPROVALS**

SECTION/BRANCH SUPERVISOR SIGNATURE

DATE SIGNED

DEPARTMENT/REGION MANAGER
MWO Seiford

DATE SIGNED
5/31/91

DIVISION OFFICER SIGNATURE

DATE SIGNED

H.O. WAGE & SALARY ADMIN. SIGNATURE

DATE SIGNED

EMPLOYEE RELATIONS SIGNATURE
Laura T. Fournier

DATE SIGNED
05.22.91

MARKETING COMPENSATION
Melinda Hughes

DATE SIGNED
5/29/91

***ORIGINATOR PLEASE SEND LAST SHEET TO TELEPHONE SERVICES**

SHIFT CODES
1 - FIRST
2 - SECOND
3 - THIRD
4 - ROTATING

OTHER COMPENSATION TYPE CODES
A - OIL ALLOWANCE
B - HEAT ALLOWANCE
C - OIL & HEAT ALLOWANCE
I - INSPECTOR DIFFERENTIAL
J - INSPECTOR DIFFERENTIAL & HEAT ALLOWANCE
K - INSPECTOR DIFFERENTIAL & OIL ALLOWANCE
L - INSPECTOR DIFFERENTIAL, HEAT & OIL ALLOWANCE
P - FIELD WALKING ALLOWANCE

Q - SALES DRAW
R - SALES BONUS
S - AREA DIFF. (ALASKA)
T - MIS

U - COST OF LIVING - RETIRED
V - DISLOCATION
W - SUPP. PENSION
X - FEDERAL TAX DEDUCTION
Y - PROJECT ADDER

MAY 27 1991

PERSONNEL

PB 01014

**A. Knowledge About Work and Responsibilities**          CATEGORY RATING   3

Daniel has been with PBMS for 3 years, and understands policies and procedures.  He often needs to be reminded to follow the written procedure inorder to complete a task properly (specifically time reporting).  Daniel understands the tasks assigned to him as a Lead Site Representative.  He is capable of running all equipment and he understands the need for quality in the work he performs.  Daniel is able to complete an extremely high volume of copying by himself.  This does sometimes put him at a disadvantage when it comes to completing his administrative tasks or his client interaction.

**B. Professionalism**                       CATEGORY RATING   3

As the Lead of a single site, Daniel often has to prioritize his duties.  He must complete the copying work that the client needs, but he must also handle administrative needs of both PBMS and the Client.  During the past 45 days Daniel has had discussions with his manager about meeting all of these needs.  Daniel must learn to ask for help when the tasks become to time consuming.  Daniel works well with clients within the firm.  He must continue to work on his relationship with the administrator.  Daniel is dependable and always on time.  Daniel can be counted on to perform overtime whenever requested.  Daniel has had one incident where the client requested that he be spoken to about his attire.  Normally, Daniel is dressed professionally.

**C. Planning and Organization**                  CATEGORY RATING   3

Daniel's planning and organization skills are excellent in most areas.  Daniel pays close attention to detail on jobs, he record keeping is clear and legible, his account is set up so that a Back-up Team member can step right in when necessary.  Daniel does need to pay closer attention to detail in his administrative work.  He also needs to learn about scheduling large jobs over an extended period of time.

**D. Capacity and Resilience**                    CATEGORY RATING   2

Daniel speaks well with the client.  He sometimes needs to pay closer attention to what the client is asking for.  He must take on the task of meeting the clients needs, even if it means delegating that task to his manager.

**E. Individual Contributions**                    CATEGORY RATING   3

Daniel is a active participant at the monthly site manager meetings.  He is respected by his peers.  Daniel has, monthly, come up with ideas that have helped PBMS adjust the way we do business.

**F. Attendance and Punctuality**                 CATEGORY RATING   5

Daniel has had 0 absences this year.  This is exceptional performance.

Daniel is never late for work.

**G. Non-Exempt Supervisors**                     CATEGORY RATING   3

Daniel has met all expectations set for PPOT and attendance within his site.  Daniel leads by doing.  He does need to work with his manager to develop his interpersonal skills.  Daniel is working to improve the accuracy of his paper work.  It is always timely.  Daniel is working to

**Pitney Bowes Management Services Memorandum**

| | |
|---|---|
| To: | Rick Barfield |
| From: | David Halverson |
| Date: | January 31, 1998 |
| Subject: | Pay Adjustment Increase for Daniel Atkins<br>(Finnegan Henderson 226130) |

---

This memorandum is to request a pay adjustment increase for Daniel Atkins, Lead Site Representative, Finnegan Henderson's Quality Control Department.

The Reprographics Department at Finnegan Henderson operates 24 hours a day five days a week producing more than two million clicks and $12,000.00 in overtime, per month. This operation could never maintain the levels of quality in it's work without the meticulous page by page production review of the Quality Control (QC) Department. The effectiveness of this department is crucial in the overall success of the firm's graphic presentations in and out of the court room.

Daniel personifies PBMS' accomplishments in the QC department through his positive attitude, dedication and job skills, insuring a quality product for our client. Daniel has consistently and effectively been able to schedule and prioritize the workload, error-free. He uses the Copy Center's resources to meet the client's needs and deadlines, insuring that the job is done right the first time; therefore saving PBMS and our client hours of labor and materials. Because of his maturity, strong work ethic, willingness to take on additional responsibilities and his impeccable attendance record, Daniel is well deserving of a pay adjustment.

Since Daniel's promotion to QC Supervisor, he has effectively turned his department into an efficient running operation with very few non-conformances. He has taken the initiative to insure that every effort is made to deliver an exceptional product to our client on-time and error free. Daniel's dedication exemplifies the best PBMS has to offer and reflects the kind of employee this company is trying to recruit or retain.

For the above reasons, I am requesting a 4 percent pay adjustment increase to accompany Daniel's 4 percent merit increase.

Should you have any questions concerning this matter, please feel free to call me at (202) 408-4415.

PB 00057

**Pitney Bowes Management Services Memorandum**

To:  Richard Wachob

From:  Dale Satterfield

Date:  September 22, 1997

Subject:  Reclassification and Pay Adjustment for Daniel Atkins
(Finnegan Henderson 226130)

---

This memorandum is to request a pay adjustment to accompany Daniel Atkins' reclassification from Site Representative To Lead Site Representative in Finnegan Henderson's Copy Center.

Daniel Atkins has been a highly valued employee of PBMS Washington since March 12, 1990. In August of 1996 he transferred to PBMS North Carolina to help found a branch of his local church. At the time of his departure his pay rate $11.13 per hour. His pay rate in North Carolina was $7.75. In March of 1997, his mission in North Carolina completed, Daniel contacted PBMS Washington to inquire about opportunities for transferring back to the Washington area. Finnegan Henderson at this time was experiencing severe operational difficulties in the Copy Center and had a critical need for experienced leadership in reprographics.

Daniel accepted the challenge of assisting in the rebuilding of the Copy Center's leadership. The agreement specified for Daniel to be reclassified to Lead Site Representative at a pay rate of $9.25 per hour. This information was communicated to the appropriate PBMS administrators at the time of his transfer, however neither his reclassification nor his adjustment were reflected in his paperwork.

Daniel has provided tremendous leadership, productivity and stability to the Copy Center at Finnegan Henderson. I am requesting that the original agreed upon terms of his transfer to Washington be executed at the earliest possible opportunity.

Should you have any questions concerning this matter, please feel free to call me at (202) 408-4215.

**Pitney Bowes**

Denise Lloyd
Senior Customer Service Manager

Pitney Bowes Management Services

Lower Level
901 E Street, NW
Washington, DC 20004-2037

202 408-4215
202 216-5136 Fax
202 405-3118 Pager
denise.lloyd@finnegan.com
www.pitneybowes.com

---

202
936-1212

**Pitney Bowes**

Wesley Fields
Customer Service Manager
Mid Atlantic Area

Pitney Bowes Management Services

MSC 20-59
Suite 200
1775 Pennsylvania Avenue, Northwest
Washington, DC 20006

202 862-4561
202 862-1093 Fax
202 405-3277 Pager
www.pitneybowes.com

---

**Pitney Bowes Management Services**

Raymond Moye
Site Manager

Nel: 525-7282
page 525-2227

FM Site: Price Waterhouse LLP
100 North Tryon Street
Suite 5400
Charlotte, NC 28202
Phone (704) 344-7609
Fax. (704) 334-6513

---

**Pitney Bowes**

Vivian Kinsey
Human Resources Generalist
Eastern Region

Pitney Bowes Management Services

MSC 20-59
901 E Street NW, Lower Level
Washington, DC 20004 - 2037
USA

(202) 508-3249
(202) 508-3272 Fax
vivian.kinsey@pb.com
www.pitneybowes.com

---

**Pitney Bowes Management Services**

202-508-3252

Sheila R. Lindsey
Human Resource Generalist

901 E Street, NW, Lower Level
Washington, DC 20004
Phone (202) 223-2230
Direct Line (202) 508-3257
Fax. (202) 508-3204

---

**Pitney Bowes Management Services**
A Pitney Bowes Company

Daniel G. Atkins
Site Manager

901 E Street NW
Washington, D.C. 20004-2037
(202) 223-2230
Fax. (202) 508-3204

---

104

CA0001

# Tab# 26

## Original Business Card [When I was a Site Manager]
### The current description of this position is "CSM"

## [See Card Attached]

**Pitney Bowes Management Services**
A Pitney Bowes Company

**Daniel G. Atkins**
Site Manager

901 E Street NW
Washington, D.C. 20004-2037
(202) 223-2230
Fax: (202) 508-3204

2 ID numbers

original numbers only:

**Pitney Bowes Management Services**
A Pitney Bowes Company

DANIEL ATKINS
Employee Name

838945
Employee Number

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
Social Security No.

Signature

(202) 223-2230

Court Doc
165

DA0194

*Engineering the flow of communication™*

# CORRECTIVE ACTION PROCESS (CAP) FORM

## X Final Written Warning

| EMPLOYEE NAME<br>Daniel G. Atkins | PERSONNEL NUMBER<br>00786442 | DATE OF HIRE<br>6/7/1990 | DATE PREPARED<br>12/29/2011 |
|---|---|---|---|
| PERSONNEL AREA<br>PBLS | POSITION<br>CSA | PREVIOUS COUNSELING & CAPS ON FILE<br>Verbal Warning on 8/11/2011<br>Written Warning on 10/19/2011 | |

The purpose of this written warning is to bring your attention to deficiencies in your performance and/or conduct, suggested improvement and consequences of failure to improve.

**NATURE OF PROBLEM:**

☐ JOB PERFORMANCE    **X** CONDUCT    ATTENDANCE/LATENESS

☐ OTHER _____

**DETAILS OF PROBLEM/EXAMPLES:**

## Insubordination – Failure to Comply with Management request to complete:

### 1. PBMS Annual Data Privacy Certification Training: An Introduction to Data Privacy and Information Security

### 2. Inside Ethics

**CORRECTIVE ACTION REQUIRED:**

**EMPLOYEE ACTIONS:**

Daniel G. Atkins is to complete the Introduction to Data Privacy and Inside Ethics training within five business days. Failure to comply will lead to further disciplinary action. Daniel is to supply proof of completion to his manager and/or team lead.

**MANAGEMENT ACTIONS:**

Revised 10/1/05

DA 0015

**PitneyBowes**

*Engineering the flow of communication™*

## CORRECTIVE ACTION PROCESS (CAP) FORM

Management will monitor the adherence to PB Policy.

**CONSEQUENCES:**

Effective immediately you are being placed on a warning for Insubordination – failure to comply with management request to complete Introduction to Data Privacy and Inside Ethics. Any additional occurrences of this issue, other performance or attendance issues may result in further disciplinary action and/or termination.

The Life Works Onesource is a confidential service available to you, the toll free number is 1-888-267-8126.  You may contact Human Resources if you have any additional questions telephone number

Please let me know if there is any way I can support you.

*This does not imply employment will continue throughout the above specified time period or in any way modify the "at will" nature of employment.

A COPY OF THIS DOCUMENT WILL BE RETAINED IN YOUR PERSONNEL FILE.
The employee is responsible for showing significant improvement in the area(s) discussed in this CAP. Failure to show significant improvement may result in further disciplinary action up to and including termination.

YOUR SIGNATURE MEANS THAT THIS MATTER WAS DISCUSSED WITH YOU AND THAT YOU RECEIVED A COPY OF THIS CAP DOCUMENT.

**EMPLOYEE COMMENTS:** *Again, I have not been issued a comment from PB, concerning the legalities of the two stated (so-called) training session. Until such is done, I will not give up my right to know their full capacity of coverage. As an employee el I have that right (legally)*

| EMPLOYEE'S SIGNATURE: *Daniel P. Tartz* | DATE: 1/03/2017 |
|---|---|
| MANAGER'S SIGNATURE                          DATE | HR GENERALISTS'S SIGNATURE                          DATE |
| NEXT LEVEL MANAGEMENT'S SIGNATURE          DATE | |

*(handwritten marginal notes, partially illegible)*

DA 0016

Revised 10/1/05

**MANAGEMENT REQUEST:**

Due to the continued failure to comply with managements request to complete:

1. PBMS Annual Data Privacy Certification Training: An Introduction to Data Privacy and Information Security

2. Inside Ethics Training

A review for separation is requested.

| MANAGER'S SIGNATURE | DATE 1/19/12 | HR GENERALIST'S SIGNATURE | DATE |
|---|---|---|---|
| NEXT LEVEL MANAGEMENT'S SIGNATURE | DATE | | |

Revised 10/1/05





### at&t
Worldnet

> **Member Services**    **HOME   MY AT&T   E-MAIL   FEATURES   SEARCH TOOLS   SHOP   HELP**

**Friday, Dec 22**        E-mail | Address Book | Calendar                    **E-mail Options**

**Mailbox Usage**        Google™ **WEB SEARCH**                              > go

7% of 25 MB

**INBOX**            [Check Mail]    [Compose Mail]                atkins

                                                        Message: 18 of 46  < Pre

> MAILBOX atki..iel

INBOX [21]        [Reply]  [Reply All]  [Forward]    Report   Print   **Move to folder:**
Draft                                                Spam            INBOX
Screened Mail        [Delete]  [Close]
SentMail
Trash empty        From:  Michael.Marinelli@pb.com  > Save Address  > Reminder
                   To:    "atkinsdaniel Atkins" <atkinsdaniel@att.net>
MY FOLDERS add     Subject:  NY position
                   Date:  Wed, 20 Dec 2006 23:32:19 +0000   [View Source]

> Folder Manager      Daniel,
> Mailbox Manager
> Address Book        Sorry we keep missing each other.
> Calendar
                      You should report to White and Case on January 2nd. Your hours will rem:
**CURRENT** SETTINGS   at 8 to 5.

Spam Blocker         You will be an operator in our copy center. White and Case is one of our t
Virus Protection     in NY.
More E-mail Options
                      Tom Gill is the Repo COM
                      Terry Spicer is the Mail COM.

                      They are at 1155 Avenue of the Americas. 212 819 7574

                      Michael P. Marinelli
                      Pitney Bowes Legal Solutions
                      212 808 3874

                      Change your options to hide images within all messages.

                         [Reply]  [Reply All]  [Forward]    Report   Print   **Move to folder:**
                                                            Spam            INBOX
                         [Delete]  [Close]

                                                        Message: 18 of 46  < Pre

Check E-mail | Compose | Folders | Mailboxes | E-mail Options | E-mail Help | E-
Logout | E-mail | Calendar | Address Book | AT&T Worldnet Home | Feedba

Compose                                                                                    Page 1 of 1

**Compose**

E-mail ID: **atkinsdar**

| Send | Cancel | Save Draft | Spell Check | Address Look-Up |

Separate multiple addresses with a comma.                                    Short-List

**To:** michael.marinelli@pb.com

**Cc:**

**Bcc:**

**Subject:** My Relocation, and being assigned to a site.

**Attach File:**                                                        Browse...   Attach more files below

**Signature:** None   ☐ **Send copy to Sent Mail folder**   ☐ **Send copy to INBOX**

**Message:**                                        ⚙ **Make stationery choice permant**         ⬇ Use

Font Face     Size    | 📋 T₂ ✎ ✗ 📋 📋 **B** *I* U ■ ■ ■ ⊟ ⊟ ⊑ ⊑ 🖋 ✏ |

Dear Mr. Michael Manrinelli:
    I have tried to call you yesterday, and I left a message on your answeri
machine. I am ready to come to New york next week. I remember that you mentioned that you
would possibly be on vacation during the rest of this week, when we spokw on November 20th
(when i thought tht I was to meet with you). I will attempt to call you later today, and see if you c
give me some suggestions, as to what I should do in response to reporting to the New York office
assignment on   January 02, 2007.
Again, I want to say thank you for this opportunity to work for the New York City office.   .
        Sincerely,
        Daniel G. Atkins
        [I.D.# 486442]

Show/Hide HTM

**Additional Attachments:**

Browse...

Browse...                '

Browse...

Browse...

| Send | Cancel | Save Draft | Spell Check |

DA0160



AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | |
|---|---|
| DANIEL G. ATKINS | ) |
| *Plaintiff* | ) |
| v. | ) |
| PITNEY BOWES MGMT. SERVICE | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   12 Civ. 5575 (JGK) (KNF)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   A 'Full Copy' of the plaintiff (Daniel G. Atkins) employment history (including all raises, demotions, EPD's, CAP's, etc)

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: By 01/03/2014

| Place: 500 Pearl Street, Room 200  Attn. Por Se Office: Attn. Judge John G. Koeltl | Date and Time: 01/11/2014 0:00 am |
|---|---|

☑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: 500 Pearl Street Pro Se Office | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   _____

*CLERK OF COURT*

OR

_____              _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   12 Civ. 5575 (JGK) (KNF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____0.00_____ for travel and $ _____0.00_____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

Daniel G. Atkins
*Printed name and title*
163 - 45 130th Ave. Apt. 13D, Sec. C
Jamaica, New York 11434

_____
*Server's address*

Additional information regarding attempted service, etc.:
 These files are being requested for the proper inspection of statement made by defendnat, and plaintiff. Every truth is
within these files and the employment history should show how alterations were made to suppot plaintiff's charge of
demotions, falsification of records and more.

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | | |
|---|---|---|
| Daniel G. ATKINS | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   12 Civ. 5575 (JGK) (KNF) |
| PITNEY BOWES MGMT. SERVICES | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    COPIES OF THE TIMES CARD ENTRIES OF DEFENDANTS (FIDEL RAZACK, BRIAN COLVIL, JERRY
LESTER)

*(Name of person to whom this subpoena is directed)*

❑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the
material: 01/03/2013 THROUGH 01/20/2012

| Place: 500 PEARL STREET, ATTN: PRO SE OFFICE ROOM 200 - FOR THE VIEWING - ATTN. JUDGE JOHN G. KOELTL | Date and Time: 01/11/2014 10:30 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: 500 PEARL STREET, | Date and Time: |
|---|---|

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance;
Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to
respond to this subpoena and the potential consequences of not doing so.

Date: _____

        *CLERK OF COURT*

                                                                OR

_____          _____
        *Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom
it is directed. Fed. R. Civ. P. 45(a)(4).

APR 28 2009

23-OCT. 88

**EMPLOYEE NAME (FIRST/MIDDLE/LAST)**
Daniel Atkins

**SOCIAL SECURITY NUMBER**
072 - 40 - 6329

May 18, 1991

## CHANGE REASON

**LEAVE OF ABSENCE**
- [ ] PERSONAL
- [ ] MILITARY
- [ ] CIVIC
- [ ] RETURN FROM LEAVE

**DISABILITY**
- [ ] LONG TERM DISABILITY
- [ ] RETURN FROM LTD

**CHANGE IN PAY RATE (CHECK WHICH APPLY)**
- [x] PROMOTION
- [ ] MERIT
- [ ] FIRST SENIORITY
- [ ] TRANSFER
- [ ] RECLASSIFICATION / RE EVALUATION
- [ ] ADJUSTMENT
- [ ] SECOND SENIORITY
- [ ] SAME RELATIVE POSITION POLICY

**NO CHANGE IN PAY RATE**
- [ ] PROMOTION
- [ ] RECLASSIFICATION / RE EVALUATION
- [ ] TRANSFER

IF TRANSFER, CHECK APPLICABLE BOX BELOW
- [ ] COMPANY EXPENSE
- [ ] EMPLOYEE EXPENSE

IF TRANSFER, CHECK APPLICABLE BOX BELOW
- [ ] COMPANY EXPENSE
- [ ] EMPLOYEE EXPENSE

**IF CORRECTION TO PREVIOUS PCA, CHECK HERE**
- [ ] CORRECTION

| CURRENT STATUS | CHANGE TO |
|---|---|
| **DIVISION** PBMS | **DIVISION** |
| **DEPARTMENT/REGION** Field Ops/Northeast | **DEPARTMENT/REGION** |
| **SECTION/BRANCH AND DISTRICT NAME** DC | **DIST. CODE** | **COST CENTER** 103120 | **SECTION/BRANCH AND DISTRICT NAME** | **DIST. CODE** 22 | **COST CENTER** 8030 |
| **TELEPHONE NO.** (202) 223-2230 | **LOCATION** Bldg A | **TELEPHONE INFO** [ ] NEW PHONE REQUIRED [ ] USING EXISTING PHONE | **LOCATION** Bldg B |
| **JOB TITLE** K - Cust Asst/Key Op | **CLOCK NUMBER** | **GRADE** 4 | **JOB TITLE** SA - Site Operator A | **CLOCK NUMBER** | **GRADE** 6 |
| [x] NON-EXEMPT [ ] EXEMPT | **SHIFT** 1 | **SCHEDULED HOURS** 40 | [ ] NON-EXEMPT [ ] EXEMPT | **SHIFT** | **SCHEDULED HOURS** |
| [x] PERMANENT [ ] TEMPORARY | | | [ ] PERMANENT [ ] TEMPORARY | | |
| [x] FULL TIME [ ] PART TIME [ ] ON CALL | | | [ ] FULL TIME [ ] PART TIME [ ] ON CALL | | |
| **RATE OR SALARY** 366.80 | **PER (HOUR/WEEK/YEAR, ETC.)** week | | **RATE OR SALARY** 412.80 | **PER** week | **PERCENT INCREASE** 12.5% |
| **OTHER COMP. TYPE** 9¹⁷/hour | **OTHER COMP. AMOUNT** | **MERIT RATING (FACTORY)** | **OTHER COMP. TYPE** 10³²/hour | **OTHER COMP. AMOUNT** | **MERIT RATING (FACTORY)** |

**LEAVE OF ABSENCE**
FROM (DATE) | THROUGH (DATE)

**COMMENTS** Security cost center: 103100
promo grade 4→5 6.0%
5→6 6.5%
TOTAL 12.5%

replacing: Darren McKinney
DNR 1/12/92

## ADMINISTRATIVE

| **LAST INCREASE DATE** 1/12/91 | **CURRENT COMPARATIO** 118% | **PERFORMANCE RATING AND DATE** 4 | **ADJUSTED SENIORITY DATE** 3/12/90 |
|---|---|---|---|
| **CURRENT RANGE** 6.32 - 7.77 - 9.33 | **NEW RANGE** 7.83 - 9.79 - 11.75 | **ATTENDANCE** — | [ ] **PAY EXCEPTION** |
| | | **NAME** | **MAIL LOCATION** |

REMOVE ORIGINATORS COPY AND IDENTIFY TO WHOM ALL
CONFIRMED COPIES ARE TO BE SENT ➞

## APPROVALS

| **SECTION/BRANCH SUPERVISOR SIGNATURE** | **DATE SIGNED** | **DEPARTMENT/REGION MANAGER** WO Seifert | **DATE SIGNED** 5/3/91 |
|---|---|---|---|
| **DIVISION OFFICER SIGNATURE** | **DATE SIGNED** | **H.O. WAGE & SALARY ADMIN. SIGNATURE** | **DATE SIGNED** |
| **EMPLOYEE RELATIONS SIGNATURE** Lawn I. Fournier | **DATE SIGNED** 05.27.91 | **MARKETING COMPENSATION** Melinda Hughes | **DATE SIGNED** 5/29/91 |

**ORIGINATOR PLEASE SEND LAST SHEET TO TELEPHONE SERVICES**

| **SHIFT CODES** | **OTHER COMPENSATION TYPE CODES** | | |
|---|---|---|---|
| 1 - FIRST | A - OIL ALLOWANCE | J - INSPECTOR DIFFERENTIAL & HEAT ALLOWANCE | Q - SALES DRAW |
| 2 - SECOND | B - HEAT ALLOWANCE | K - INSPECTOR DIFFERENTIAL & OIL ALLOWANCE | R - SALES BONUS |
| 3 - THIRD | C - OIL & HEAT ALLOWANCE | L - INSPECTOR DIFFERENTIAL, HEAT & OIL ALLOWANCE | S - AREA DIFF. (ALASKA) |
| 4 - ROTATING | I - INSPECTOR DIFFERENTIAL | P - FIELD WALKING ALLOWANCE | T - MIS |

U - COST OF LIVING - RETIRED
V - DISLOCATION
W - SUPP. PENSION
X - FEDERAL TAX DEDUCTION
V - PROJECT ADDER

PERSONNEL

MAY 27 1991

PB 01014

# FRONTLINE



**This Certifies Successful
Completion of the Training System
FrontLine Leadership**

Presented to:

*Daniel Atkins*

*Pitney Bowes Management Services*

*September 19, 1997*

ZENGER
MILLER

DA exhibit 01292

CA0053(A)

# Certificate of



In recognition of your excellent services and commitment to
Pitney Bowes Management Services

## Daniel Atkins

of

**Finnegan, Henderson, Farabow, Garrett
& Dunner LLP**

We want to thank you for your dedication.

*Thomas Benvenuto*
**General Manager**

# Recognition



CA0055(A)

 

## Standards of Conduct
### Revised Oct 1, 2004

Pitney Bowes will not tolerate conduct that interferes with business operations, discredits Pitney Bowes, or is offensive to customers or fellow employees.

Violation of this policy may subject an employee to discipline up to and including unpaid disciplinary suspension and/or termination.

**As a Pitney Bowes employee, you are responsible for upholding the company's Standards of Conduct.**

### Overview
Pitney Bowes maintains Standards of Conduct for all employees, which are necessary for effective business operations and for the benefit and safety of all employees.

Employees are expected to:

- Comply with the Standards Of Conduct and other guidelines set forth on the PB Policy Website, the Standards of Professionalism Business Practices Guidelines and all other Pitney Bowes policy statements

- Display proper respect for co-workers

- Accept and carry out job assignments

- Avoid conduct that is disruptive or adverse to the best interests of Pitney Bowes

### Guidelines
The Standards of Conduct policy applies to all employees during working hours, off-site and at Pitney Bowes sponsored events.

Employees are expected to conduct themselves in a professional manner, use common sense, and comply with Pitney Bowes policies at all times.

Standards of Conduct include:

- Reporting to work as scheduled and being at the proper workstation, ready for work, at the assigned starting time

- Giving proper advance notice for absences or tardiness

- Complying with all Pitney Bowes property usage guidelines including, but not limited to, proper usage of computers, e-mail and the Internet

- Adhering to the Non-Smoking Workplace policy (includes smokeless tobacco products)

- Wearing appropriate clothing

- Maintaining workplace and work area cleanliness and orderliness

- Treating all customers, visitors and fellow employees in a courteous manner _PB 01134  or others_

- Refraining from behavior or conduct deemed offensive or undesirable, or contrary to the best interests of Pitney Bowes

For updated policy information, please check the PB Web Intranet or contact the Employee Service and Support Center at 1-800-932-3631.

70

_Also (DA 0270)_

_DA 0086_

SCOTT MACK

- ♦ Refraining from engaging in any form of sexual harassment or other types of harassment or discrimination

- ♦ Refraining from falsifying any company document — Pitney Bowes MANAGERS

- ♦ Reporting any knowledge of falsified documents or other violations of policy

- ♦ Complying with Pitney Bowes policies on solicitation and distribution

- ♦ Maintaining all confidential information in strictest confidence within Pitney Bowes

## Special Notes
- ♦ The guidelines above are illustrative of the type of desired behavior, but are not intended to be all-inclusive.

- ♦ Questions regarding the Standards of Conduct policy should be directed to your supervisor.

DA0271   DA0217



2009 OCT 15 A 10: 22

While Tom Gill set in luis
meUiha's office, he order
Brian Covil to maken copy
of firm Confidential Report
(1 3" BLACK BIDDER) -
CEASER - EPERATOR.

DA0102



WHITE & CASE

# Vendor Certification of Compliance

I hereby agree with and declare to White & Case LLP ("the Firm") as follows:

## DECLARATION

I have received copies of and have read and understood White & Case LLP's Global Securities Trading Policy and Policy on Preservation of Confidences and Prevention of Misuse of Material Non-Public Information.  I hereby agree to comply with all aspects of these policies. I understand that if I have any questions regarding compliance with these policies, I should consult with the General Counsel or a member of the Firm's Restricted Securities Committee.

I understand the importance attached by the Firm to confidentiality and secrecy and to the protection of its proprietary information and information relating to its clients and counterparties. I agree and undertake not in any circumstance to use or disclose to any third party any information which relates to the Firm or its business, its clients or counterparties, its employees, its associates, its plans, its circumstances or its intentions. I accept that I shall continue to be bound by this declaration notwithstanding the termination of my access to the Firm. I also undertake to either return to the Firm or expunge all such information which I may have in my possession upon the termination of such access.

I am aware that electronic information is crucial to the Firm. I should only attempt to access the information and services I need in order to carry out my duties and for which I am authorized. The Firm will hold me accountable for actions carried out on computer systems using my User Identification. I should, therefore, keep the associated password confidential and change it regularly to prevent it from becoming known to others. I undertake never to use someone else's User Identification and password or allow anyone to use mine.

In addition, I am aware that if I have information gained deliberately or by accident from my work at the Firm which could be described as material, non-public information with respect to a particular company and thereafter deal in the securities of that company or advise another person to deal in those securities I may be considered as having undertaken insider dealing, as defined by the relevant insider dealing prevention legislation.

I understand that if I have any questions regarding the application of the Declaration, I should raise them with the General Counsel or a member of the Firm's Restricted Securities Committee.

Name  Daniel Atkins

Signature  Daniel D. Atkins

Dated  08/10/2009

DA0080

# Student Schedule

**Student Name:** Atkins, Daniel G

**ID:** 0000043906

**Program Version:** Master of Divinity in Theology and Missions- MC

**Academic Advisor:** Austin-Lucas, Barbara

**Enroll Status:** Active

**Start Date:** 9/4/2013

| Weekday | Start Time | End Time | Campus | Building | Room # | Course | Section | Description | Instructor | Audit | Credits | Date Start | Date End | Delivery M. |
|---------|-----------|----------|--------|----------|--------|--------|---------|-------------|------------|-------|---------|-----------|----------|-------------|
| **Term: SP14 - Spring 2014** | | | | | | | **12.00 Credits** | | | | | | | |
| S | 9:00 AM | 3:30 PM | Manhattan Campus | WTS | 1807 | CS502 | NA | The Church as a Social and Cultural Institution | Carlo, Luis | No | 3.00 | 1/18/2014 | 3/1/2014 | Standard On Campus |
| | | | | | | Comments: 1st Fast Track (1/18 - 3/1) | | | | | | | | |
| S | 9:00 AM | 3:30 PM | Manhattan Campus | WTS | 1804 | CD702 | NA | Working with People | Austin-Lucas, Barbara | No | 3.00 | 3/8/2014 | 5/3/2014 | Standard On Campus |
| | | | | | | Comments: 2nd Fast Track (3/8 - 5/3) | | | | | | | | |
| T | 10:00 AM | 1:00 PM | Manhattan Campus | WTS | 1805 | NT505 | NA | Hermeneutics | Decaro, Louis | No | 3.00 | 1/28/2014 | 5/10/2014 | Standard On Campus |
| T | 6:00 PM | 9:00 PM | Manhattan Campus | WTS | 1807 | NT503 | NA | Reading the New Testament | Shellrude, Glen | No | 3.00 | 1/28/2014 | 5/10/2014 | Standard On Campus |

**Comments:**

U-Sunday
M-Monday
T-Tuesday
W-Wednesday
R-Thursday
F-Friday
S-Saturday

# - Pass/Fail Course

| Course Title | Course Start/End Date | Credits Attempted | Credits Earned | Mid Term Grade | Final Grade |
|---|---|---|---|---|---|
| Theology in Global Context (Equivalent Course: TH500) | 9/4/2013 to 12/18/2013 | 3.0 | 3.0 | | A- |
| History of Christianity (Equivalent Course: CH705) | 9/4/2013 to 12/18/2013 | 3.0 | 3.0 | | A- |
| Reading the Old Testament (Equivalent Course: OT612) | 9/4/2013 to 12/18/2013 | 3.0 | 3.0 | | B+ |
| Preaching in the Urban Context (Equivalent Course: CD741) | 9/4/2013 to 12/18/2013 | 3.0 | 3.0 | | B+ |

**Term GPA** 3.50                    **Enrollment Cum. GPA** 3.50

Daniel G. Atkins

PO Box 0582, NYC, NY 10116

Vicki A. O'Meara

[Executive Vice President and President,
 Pitney Bowes Services Solutions]
C/O; Pitney Bowes Inc.
1 Elmscroft Road
Stamford, CT. 069260700

Dear M®s Vicki O'Meara;

           I have, or had, been an employee of longs and good standings until a couple of wrongful acts had been committed against me by managers and supervisors during my employment with Pitney Bowes Mgmt. Services (or Pitney Bowes Inc.). My tenure stretched from 03/121990 through 01/30/2012. I had been an exemplified employee, but have fell prey to the corruptive efforts of many who sort to get rid of me for some time due to my blowing the whistle of wrongdoing. I don't know how to express myself other than to say that my current status is as a plaintiff against the very company that I had worked hard to promote, protect, and perform in the highest standards in manner of worthiness. I efforts included hard work and dedication to the company and focus on keeping things safe for the company's integrity. But, as you see now I am the enemy by those same standards. This was done by those who sort to destroy that very same reputation of Pitney Bowes through their acts of discrimination, theft, harassment and more. During my twenty two years of employment I have faced a good amount of corruption, and I stood up for the company, and managers (in several places) thought that the truth was more dangerous that the false impressions that they displayed while performing their efforts of wrongdoing in the workplace. So, today I am a renegade to the very same company that many (other) have also fallen prey to.

           All of my efforts stood for were to live in the truth and earn a fair wage with a future. But I got the other end of the stick. So, as I look at the current situation involving legal justice I notice that the lawyers representing Pitney Bowes Inc. are 'only' interested in billing your company huge amounts of monies to increase their yield. But, if you look at some of the documents that are being accompanied by this letter you can see that I have done nothing other than attempting to defend the truth about myself (and others who have done me wrong by deceit and fraud. The fact that I was 'terminated' because I requested human resources, and my assigned Site Manager, in New York, to give me the assurance that the training sessions (confidentiality and inside ethics) would not be used as a tool to restrict me from complaining against them about the various abuses that I had experienced from other persons employed in the company (and site). I had been the victim of an assault (with no incident report made up) with the manger attempted to coerce me into writing a letter denying the incident ever happening. In addition to this incident I had been the victim of a religious slur (Jesus Christ was Gay) and an email assassinating my character (being falsely accused of 'derogatory' comments). Then, if was my manager falsely accusing me of making a threat

against him, and another supervisor calling me a trouble maker because of my downing their false time card violations[24]. The manager's false charge of threatening him (without telling me what the threat was and who his witnesses were) are also part of the reasons for them to look to my demise. Other falsifications were their listing overtime that they created by working lunch hours and not punching the time clocks in, or out, and counting the correct time worked daily. And, the most harmful offense of them all was that the manager 'stole' the firm's partner's personal financial files and took them home on one occasion. All of this, and more, were the reasons that Pitney Bowes' lawyers are charging you (the company) large amounts of money to defend.

There were many other reasons that they are in hot pursuit in destroying my reputation and that stems from the falsification of documentation concerning the great distortion of my previous employment records with Pitney Bowes prior to being transferred to New York in (late0 2006 / (early) 2007. The most recent filing of papers to the court in New York, from Pitney Bowes Inc. showed that my employment levels 'only' included some mailroom employment (and at the lower leveled CSA status). But, as you can see by the documents accompanying this letter, they lied to the court sworn declaration by Dana Reolke. Proof of this is to be seen in the documents that you have accompanying this letter. And, a copy of a few time card postings that were followed by their weekly computer generated time assessment sheet of honesty for the employee to fill out weekly for payroll approval (also, to be approved by the  manager of the site).

One thing that I forgot to mention was the site that I worked at last, and that site was at the law firm of White & Case LLP, New York. One of the important factors for you to check is their current time clock procedures, and I don't have to mention that you can still obtain the last two years of these violated time cards (along with the fraudulent weekly acknowledgment of them). I remember that these time (and every other) time cards can be destroyed after three years, so you can see the past two years remaining from that group. Integrity is supposed to be key to our success, and honesty is supposed to our amour bearer. But, integrity has a long way to go in this case. Every wrongful act, by the many, has been geared towards damaging my reputation, but the proof is plain to see (by documented evidence) that those who threaten to damage me only hurt the truth in which the company should have stood for. Big law firms won't change what is wrong because it is all about making big money the on fees instead of making sense of the real truth while saving companies', and clients, much money and shame.

---

[24] This included falsely posting overtime worked, supervisors signing out time (when time clocks were 'fully' functional), some times of one supervisor was improperly punched in because many days that same supervisor 'never' clocked or out). One supervisor, 'never' marking his time card 'tardy' without pay when he was usually late reporting to work and each week these supervisors filled out their weekly (on Computer) online time recording and lied on every weeks' report).  And, the site manager's theft of the firm's partners 'personal financial report (as he took a copy home on one occasion). The manager responsibility is to oversee all activities at the site, which includes time reporting.

Anyway, I had hoped that your reading this letter would help you visualize the problems in the company and figure out what procedures that need to be corrected (and what people have been picking to pockets of so many honest and hard workers that stood in line for the right reasons to be proud about working for your company).

I want to thank you for reading this letter, and viewing the accompanying material for shows the holes in the company. And, those whole blamed a man that worked hard and (as I thought) was doing the right thing. But life doesn't always work out right for the innocent and it is the way of the future. My life has been on a down spiral since the termination, but life makes sure that I never forget to realize that being right sometimes cost you more than being wrong and corrupted in life. These are the ways of life and probably will continue to plague your company as the thieves proper over profit of the organization (while lies become truths and truths become lies).

It is my pleasure to write to you because seldom are the small heard by the powerful leadership that gear these large corporations into a future of success. The people on the bottom work hard to earn a fair wage, and they are 'often' stepped on by those who would believe that it is okay to do so. But it isn't fair for anyone when that happens. I've spent years of knowing this at first hand. So, than you for taking the time to read, review, and acting on this information that should help matters.

Respectfully,<br>
Daniel G. Atkins<br>
[Pro Se Litigant and Former Employee]

P.S. A copy of this letter is being mailed to the court and I would assume that you will make a copy for your legal representatives (Edward, Wildman, and Palmer LLP, NY). And my court filing number is 12 Civ. 5575 (JGK) (KNF)  Re: Daniel Atkins v. Pitney Bowes Mgmt. Services

The Following documents represents the criminal activities of employees in violation of time clock irregularities, and more (they were in the original documents filed in court – which flash drive was lost and someone (in your organization knew about).

- DA 0088 through DA 0091 – no lunch and irregular time reporting (no tardy charges)
- DA 0092 supervisor 'not' punching out when time clock was operational
- DA 0093 same supervisor and same (or different card)
- DA 0094 another supervisor (who supervise the time cards)
- DA 0095 another supervisor who hardly punches in (time clock infraction regularly)
- DA 0096 supervisor over time cards – overtime and lateness (no tardy posting)
- Again DA 0097 and 0098 two supervisors time punching problems continued

[Reasons for the verbal act of Hassan Razack – plaintiff was a 'troublemaker']

These documents have been mailed to the client's main corporate office, in Connecticut, to avoid their long drawn out affair (and the additional cost to the court and client).

**F. Rozzuck , 09/11-09/24**

**9:30am – 6:30pm / ( 1hr lunch )**

Name _____

PERIOD _____

HOURS _____ RATE _____ AMOUNT _____

_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Sp Mo 11:19A | Th 10:11 P | 10:52 | 10:52 | 5 HRS |
| Tu 11:21A | Tu 11:10P | 11:49 | 22:41 | 6 HRS |
| We 10:01A | We 10:03P | 12:02 | 34:43 | 5 HRS |
| Th 10:19A | Fr 12:17A | 13:58 | 48:41 | 7 HRS |
| Fr 9:45A | Fr 11:42P | 13:57 | 62:38 | MADE UP. |
| Mo 9:36A | Mo 8:00 | 10:24 | 73:02 | 2.4 |
| Tu 9:39A | Tu 9:10P | 11:31 | 84:33 | 3.5 |
| We 10:56A | We 9:52P | 10:56 | 95:09 | 2-6 |
| Tu 9:36A | Tu 9:08P | 11:52 | 106:41 | 3.5 |
| Fr 9:38A | Fr 9:02A | 11:24 | 118:05 | 3.4 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature _____

7000E

DA 0088

**D. Atkins , 09/11-09/24**

**8:00am – 5:00pm / ( 1hr lunch )**

Name_____

PERIOD_____

HOURS_____ RATE_____ AMOUNT_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Mo 7:51A | Mo 1:32P | 5:41 | 5:41 | |
| Mo 2:27P | Mo 5:12P | 2:45 | 9:26 | |
| Tu 7:48A | Tu 1:34P | 5:46 | 14:12 | |
| Tu 2:32P | Tu 5:15P | 2:43 | 16:55 | |
| We 7:55A | We 1:32P | 5:37 | 22:32 | |
| We 2:30P | We 5:08P | 2:38 | 25:10 | |
| Th 8:41A | Th 1:50P | 5:09 | 30:19 | ∟ 7 TRSy |
| Th 2:45A | Th 5:05P | 2:20 | 32:39 | |
| Fr 8:14A | Fr 1:45P | 5:31 | 38:10 | ∟ 2 TRSy |
| Fr 2:40P | Fr 5:07P | 2:27 | 40:37 | |
| Mo 7:55A | Mo 2:16A | 6:21 | 46:58 | |
| Mo 3:03P | Mo 5:03P | 2:00 | 49:58 | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature_____

7000E

---

**F. Razack , 09/11-09/24**

**9:30am – 6:30pm / ( 1hr lunch )**

Name_____

PERIOD_____

HOURS_____ RATE_____ AMOUNT_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Mo 11:19A | Mo 10:11P | 10:52 | 10:52 | 5 HRS |
| Tu 11:21A | Tu 11:10P | 11:49 | 22:41 | 6 HRS |
| We 10:01A | We 10:03P | 12:02 | 34:43 | 5 HRS |
| Th 11:19A | Fr 12:17A | 12:58 | 46:41 | 7 HRS |
| Fr 9:45A | Fr 11:42P | 13:57 | 60:38 | |
| Mo 9:36A | Mo 8:00P | 10:24 | 73:02 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature_____

7000E

DA0089

**B. Colvil , 06/05-06/18**

**01**   9:00am – 6:00pm / ( 1hr lunch )

Name_____

PERIOD_____

HOURS_____ RATE_____ AMOUNT_____

· 2 TRS 1

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Mo 9:14A | Mo 9:05P | 11:51 | 11:51 | 3-9 |
| Tu 9:15A | Tu 5:19P | 8:04 | 19:55 | · 2 TRS 1 |
| We 8:57A | We 8:58P | 12:01 | 31:56 | 4 |
| Th 8:59A | Th 6:05P | 9:06 | 41:02 | 1·1 |
| Fr 9:00A | Sa 12:00A | 15:00 | 56:02 | 7 |
| Su 11:32A | Su 8:30P | 8:58 | 65:00 | 9 |
| Mo 9:05A | Mo 5:17P | 8:12 | 73:12 | |
| Tu 9:02A | Tu 7:30P | 10:28 | 83:40 | 2-5 |
| We 9:14A | We 6:32P | 9:18 | 92:58 | 1·8 |
| Th 9:08A | Th 6:35P | 9:27 | 102:25 | 15 |
| Fr 8:59A | | | | |
| Fr 6:06A | | | | 1 |
| | | | | · 2 TR 1 y |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature
7000E

Still not punching out
for lunch —
no projects reporting
work through.

DA0090

**B. Colvil , 06/05-06/18**

**01**   9:00am – 6:00pm / ( 1hr lunch )

Name _____

PERIOD _____

HOURS _____ RATE _____ AMOUNT _____

· 2 TRS-7

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Jr. Mo 9:14A | Mo 9:05P | 11:51 | 11:51 | 3·9 |
| Tu 9:15A | Tu 5:19P | 8:04 | 19:55 | · 2 TRS-7 |
| We 8:57A | We 8:58P | 12:01 | 31:56 | 4 |
| Th 8:59A | Th 6:05P | 9:06 | 41:02 | 1·1 |
| Fr 9:00A | Sa 12:00A | 15:00 | 56:02 | 7 |
| Su 11:32A | Su 8:50P | 8:58 | 65:00 | 9 |
| Mo 9:05A | Mo 5:17P | 8:12 | 73:12 | |
| Tu 9:02A | Tu 7:30P | 10:28 | 83:40 | 2·5 |
| We 9:14A | We 6:32P | 9:18 | 92:58 | 1·3 |
| Th 9:08A | Th 6:35P | 9:27 | 102:25 | 15 |
| Fr 8:59A | | | | |
| Fr 6:06P | | | | 1 |
| | | | | |
| | | | | · 2 TR 4 |

B = Automatic Break Deduction

Employee Signature

7000E

Still not punching out
for lunch –
No projects penalting
people through.

DA0090

## Card 1

**D. Atkins, 09/11-09/24**
**8:00am – 5:00pm / ( 1hr lunch )**

Name _____

PERIOD _____

HOURS _____ RATE _____ AMOUNT _____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Sp Mo 7:51A | Mo 1:32P | 5:41 | 5:41 | |
| Mo 2:27P | Mo 5:12P | 2:45 | 8:26 | |
| Tu 7:48A | Tu 1:34P | 5:46 | 14:12 | |
| Tu 2:32P | Tu 5:15P | 2:43 | 16:55 | |
| Wt 7:55A | Wt 1:32P | 5:37 | 22:32 | |
| Wt 2:30P | Wt 5:08P | 2:38 | 25:10 | |
| Th 8:41A | Th 1:50P | 5:09 | 30:19 | 7 TRSY |
| Th 2:45P | Th 5:05P | 2:20 | 32:39 | |
| Fr 8:14A | Fr 1:45P | 5:31 | 38:10 | 2 TRSY |
| Fr 2:40P | Fr 5:07P | 2:27 | 40:37 | |
| Mo 7:55A | Mo 2:16A | 6:21 | 46:58 | |
| Mo 3:03A | Mo 5:03P | 2:00 | 48:58 | |

B = Automatic Break Deduction

Employee Signature
7000E

## Card 2

**F. Razack, 09/11-09/24**
**9:30am – 6:30pm / ( 1hr lunch )**

Name _____

PERIOD _____

HOURS _____ RATE _____ AMOUNT _____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Sp Mo 11:19A | Mo 10:11P | 10:52 | 10:52 | 5 HRS |
| Tu 11:21A | Tu 11:10P | 11:49 | 22:41 | 6 HRS |
| Wt 10:01A | Wt 10:03P | 12:02 | 34:43 | 5 HRS |
| Th 10:19A | Fr 12:17A | 13:58 | 48:41 | 7 HRS |
| Fr 9:45A | Fr 11:42P | 13:57 | 62:38 | |
| Mo 9:36A | Mo 8:00P | 10:24 | 73:02 | |

B = Automatic Break Deduction

Employee Signature
7000E

No tandys'
No Lunch
( but overtime)

DA0091

## B. Colvil , 04/23-05/06
## 9:00am – 6:00pm / ( 1hr lunch )

Name_____

PERIOD_____

HOURS _____ RATE _____ AMOUNT_____

_____

_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Ap Su 2:27P | 10:3? | | | |
| Mo 10:27A | Mo 6:34P | 8:07 | 8:07 | |
| Tu 8:44A | Tu 7:59P | 11:15 | 19:22 | |
| We 8:54A | | | | |
| | We 9:57P | | | |
| Th 8:57A | | | | |
| Th 10:07P | | | | |
| Fr 9:11A | Fr 6:36P | 9:25 | 28:47 | |
| Mo Mo 8:49A | Mo 4:53P | 8:04 | 36:51 | |
| Tu 8:51A | Tu 5:46P | 8:55 | 45:46 | |
| We 9:24A | We 7:00P | 9:36 | 55:22 | |
| Th 9:10A | Th 8:58P | 11:48 | 67:10 | |
| Fr 9:08A | Fr 6:47P | 9:39 | 76:49 | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature _____

7000E

DA0092

## B. Colvil , 04/23-05/06
## 9:00am – 6:00pm / ( 1hr lunch )

**Name**_____

PERIOD _____

HOURS _____ RATE_____ AMOUNT_____

_____

_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Ap Sa 2:27P | | | | |
| Na 10:27A | Na 6:34P | 8:07 | 8:07 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature _____

7000E

DA 0093

**F. Razack , 04/23-05/06**
**9:30am – 6:30pm / ( 1hr lunch )**

Name _____

PERIOD _____

HOURS _____ RATE _____ AMOUNT_____

_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Ap No 9:15a | No 9:50p | 12:35 | 12:35 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature
7000E

DA0094

Punch (?)    Punch (?)
  IN            out

### J. LESTER , 05/21-06/03
## 12:00PM – 9:00PM / ( 1HR LUNCH )

Name_____

PERIOD _____

HOURS _____ RATE _____ AMOUNT_____

_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| My Mo 9:09P | | | | |
| Tu 9:14P | | | | |
| We 9:11P | | | | |
| Th 9:24P | | | | |
| Fr 9:35P | | | | |
| Mo 6:18P | | | | |
| Tu 8:59P | | | | |
| Jn We 9:12P | | | | |
| Fr 9:15P | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

DA0095

Employee Signature
7000E

WILLIAM CASE
1155 AVE OF AMER
NEW YORK, NY 10036

2011 JUN 14  A 8: 12

WHITE & CASE
1155 AVE OF AMER
NEW YORK, NY 10036

2011 MAR 25  A 7: 51

**F. Razack ,  03/12-03/25**

**( 9:30am – 6:30pm / ( 1hr lunch )**

Name_____

PERIOD _____

HOURS _____ RATE_____ AMOUNT_____

_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Mr | Mo 10:32 P | | | 5·5 |
| Tu 9:51A | Tu 10:21P | 12:50 | 12:50 | 5·4 |
| | We 8:59 P | | | 4 |
| | Th 10:15 P | | | 5·3 |
| | Fr 8:27 P | | | 3.5 |
| | Mo 10:06 P | | | 5 |
| Tu 9:37A | Tu 10:02 P | 12:25 | 25:15 | 5 |
| We 9:32A | | | | |
| | We 11:34 P | | | 6·5 |
| Th 9:37 P | Th 10:02 P | 12:25 | 37:40 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

**DA 0096**

Employee Signature
7000E

**O**

## B. Colvil , 02/27-03/12
## 9:00am – 6:00pm / ( 1hr lunch )

Name_____

PERIOD_____

HOURS _____ RATE _____ AMOUNT_____

_____

_____

| IN | OUT | HOURS WORKED | ACCUMULATED TOTAL | COMMENTS |
|---|---|---|---|---|
| Mo Mo 9:15A | Mo 5:19A | 8:04 | 8:04 | |
| Tu 8:58A | Tu 2:25P | 5:27 | 13:31 | |
| Tu 3:25P | Tu 6:10P | 2:45 | 16:16 | |
| Th 9:05A | Th 5:07P | 8:02 | 24:18 | |
| Fr 9:04A | Fr 5:26P | 8:22 | 32:40 | |
| Mo 9:29A | Mo 2:39P | 5:10 | 37:50 | |
| | Mo 6:03P | — | No | |
| Tu 8:58A | Tu 5:11P | 8:13 | 46:03 | |
| We 9:03A | We 5:32P | 8:29 | 54:32 | |
| | Th 5:10P | | | |
| Fr 9:40A | Fr 6:33P | 8:53 | 63:25 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B = Automatic Break Deduction

Employee Signature
7000E

**DA0098**

*Punching in and out violations "ignored" by FR + Medina.*

2010 MAR 15  A  7:19