UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

DANIEL ATKINS,

                        Plaintiff,            12 Cv. 5575 (JGK)

        - against -                           MEMORANDUM OPINION &
                                              ORDER
PITNEY BOWES MANAGEMENT SERVICES ET
AL.,

                        Defendants.

————————————————————————

JOHN G. KOELTL, District Judge:

    The pro se plaintiff, Daniel Atkins, brings this action
against Pitney Bowes Management Services ("Pitney Bowes"), Luis
Medina, Brian Colvil, Jerry Lester, and unidentified Pitney
Bowes human resources managers.  Atkins appears to allege claims
for employment discrimination, retaliation, hostile work
environment, assault, battery, defamation, and wrongful
termination.  The defendants moved pursuant to Rule 56 of the
Federal Rules of Civil Procedure for summary judgment on all
causes of action.  This Court has jurisdiction under 28 U.S.C.
§ 1331 and 28 U.S.C. § 1367(a).  For the reasons explained
below, the defendants' motion is **granted**.

    On December 22, 2014, the plaintiff also moved for summary
judgment.  He failed to request a pre-motion conference or
provide a Rule 56.1 Statement of Facts.  And, as explained
below, the motion lacks merit and is therefore **denied**.

1

**I.**

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

When, as here, a pro se plaintiff opposes summary judgment, the Court must afford the plaintiff "special solicitude" in the construction of the pleadings and the motions and in the enforcement of procedural rules. See Tracy v. Freshwater, 623 F.3d 90, 100-03 (2d Cir. 2010). However, this solicitude does not "relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).

## II.

The parties do not dispute the following facts unless otherwise noted.

### A.

Pitney Bowes employed David Atkins from June 1990 to January 2012.  Atkins Dep. Tr. 6.  Pitney Bowes staffs mailrooms, copy centers, and conference rooms and provides other administrative services for businesses.[1]  Marinelli Decl. ¶ 2. From 1990 to 2006, Atkins worked in the copy centers and the mailrooms of various District of Columbia law firms.  Atkins Dep. Tr. 296-98.

In May 2005, Atkins filed a complaint against Pitney Bowes in the United States District Court for the District of Columbia, alleging claims for wrongful termination, discrimination, and retaliation.  <u>Atkins v. Pitney Bowes Mgmt. Servs.</u>, No. 05cv912 (D.D.C. filed May 6, 2005).  In April 2006, the parties settled the case.  As part of the settlement agreement, Pitney Bowes promised to enroll Atkins in "Team Lead Training" and to transfer Atkins to an available position in New York City.  In exchange, Atkins agreed to release Pitney Bowes

---

[1]    In October 2013, Novitex Acquisition, LLC purchased the outstanding shares of Pitney Bowes common stock.  Marinelli Decl. ¶ 4.  Because this acquisition occurred after the plaintiff's termination and because both parties refer to Pitney Bowes as the defendant, the Court will refer to the corporate defendant as "Pitney Bowes."

and its employees from any liability arising before the date of the settlement agreement.  Atkins Dep. Tr. Ex. 6.  In December 2006, Atkins began working in the copy center for Pitney Bowes at White and Case, LLP in New York City.  Atkins Dep. Tr. 6-7.

On November 11, 2009, Atkins alleges that he overheard Brian Colvil, a supervisor in the copy center, telling another employee that he believed Jesus Christ was gay.  Atkins Dep. Tr. 156-57.  Colvil made this comment in a copy room, about fifteen to twenty feet away from where Atkins was standing.  Atkins Dep. Tr. 157-58.  Atkins then informed Medina that he was offended by Colvil's comment.  Atkins Dep. Tr. 161-62.

Atkins also alleges that Colvil laughed at him and made "lewd sounds" when Atkins read the Bible during breaks, that Colvil made rude comments to him, and that Colvil "impeded" his travel.  Atkins Dep. Tr. 164-67, 194-96.  Atkins also claims that he found a letter from Colvil to Medina dated October 5, 2010, in which Colvil alleged that Atkins referred to someone as a "white devil."  Atkins Dep. Tr. 197-99, 221-23.  Atkins further asserts that Colvil drew a picture of the copy room employees that did not include Atkins.  Atkins Dep. Tr. 226-30.  And at his deposition, Atkins described a number of other verbal altercations between Colvil and him.  Atkisn Tr. 216-20, 224-25, 230.

In August 2009, Atkins informed Medina that Colvil and Fidel Razak had falsified their time cards.  Atkins Dep. Tr. 180.  Medina then informed the Pitney Bowes copy center employees that they must fill out their time cards correctly.  Atkins Dep. Tr. 182.

In November 2010, Atkins was transferred from the copy center to the mailroom of White and Case.  Atkins Dep. Tr. 186.  Atkins believes that the transfer was in retaliation for "all the activities that were going on in the copy center."  Atkins Dep. Tr. 183, 186.  After he transferred, Atkins retained the same job title, salary, and responsibilities.  Atkins Dep. Tr. 184.  Atkins worked in the mailroom at the White and Case New York office until he was terminated in January 2012.  Atkins Dep. Tr. 186.

On February 18, 2011, Atkins alleges that Jerry Lester, a supervisor, yelled at him and pushed him.  Atikins Dep. Tr. 201-02, 238.  Atkins was startled and hit his head on a wall.  Atikins Dep. Tr. 203, 239-40.  Atkins informed Medina of the incident, and Medina reprimanded Lester.  Atkins Dep. Tr. 207.

On March 30, 2011, Atkins alleges that Medina told Atkins that "[y]ou people [are] always looking for somebody to give you something."  Atkins Dep. Tr. 108.  Atkins, who is African American, believed that "you people" referred to his race.

6

Atkins Dep. Tr. 109-10.  Medina denies making this statement.
Medina Decl. ¶ 20.

According to Atkins, Medina is the only person from Pitney
Bowes that discriminated against him on the basis of, or made a
comment about, his race during the relevant time period.  Atkins
Dep. Tr. 119, 150-51.  And Atkins does not allege that he was
denied a promotion to team leader because of his race.  Atkins
Dep. Tr. 121, 133.

### B.

In July and August of 2011, Pitney Bowes required that all
of its employees complete two online training courses, one on
data privacy and the other on insider ethics.  Marinelli Decl. ¶
3.  Pitney Bowes required that its employees finish the insider
ethics course by August 17, 2011, and the data privacy course—
after an extension—by October 1, 2011.  Id.

On or around August 9, 2011, Shakel Houssain Ali, a Pitney
Bowes team leader, informed Atkins that he needed to complete
the training and offered to provide Atkins a computer to do so.
Atkins Dep. Tr. 10-14; Ali Decl. ¶ 4.  Atkins told Ali that he
would not complete the training.  Ali Decl. ¶ 4.  On August 11,
Medina asked Atkins why he refused to complete the training, and
Atkins explained that he feared the training would prevent him
from speaking about the harassment that he had faced at Pitney
Bowes.  Atkins Dep. Tr. 15-19; Medina Decl. ¶ 7.

That same day, Medina e-mailed and called Mayte Lopez, then a Pitney Bowes Human Resources Generalist, and Lopez and Medina decided that Atkins should be issued a verbal warning for insubordination.  Medina Decl. ¶¶ 8–9, Ex. 1; Lopez Decl. ¶¶ 4–5.  Accordingly, Medina gave Atkins a verbal warning on August 11, 2014.  Medina Decl. 9, Ex. 2.

On August 18, 2011, Lopez met with Atkins to discuss why he refused to complete the training.  According to Lopez, Atkins's explanation was incomprehensible.  Nonetheless, Lopez asked Atkins to complete the training by August 22, 2011.  Atkins Dep. Tr. 24; Lopez Decl. ¶ 7.

On September 6, 2011, Medina e-mailed Lopez, informing her that Atkins had failed to complete the training by August 22, 2011.  Medina Decl. Ex. 3.  Medina and Lopez then determined that Atkins should be given a written warning for insubordination.  Lopez Decl. ¶ 9; Medina Decl. ¶ 12.  On October 19, 2011, Medina met with Atkins and issued him a written warning.  Atkins Decl. 43–45, Ex. 2; Medina Decl. ¶ 12. Lopez also met with Atkins that day and informed him that if he failed to finish the training in thirty days, he would be subject to further disciplinary action, including termination. Lopez Decl. ¶ 10.

Having failed to complete the training, Atkins received a final warning for insubordination on January 3, 2012.  He was

informed that if he failed to complete the training within five business days, he would be subject to further disciplinary action, including discharge.  Atkins Tr. 46-48, Ex. 3; Medina Decl. ¶¶ 15-16.  Between January 3 and January 13, 2012, Lopez also met with and explained to Atkins that he would be discharged if he failed to complete the training.  Lopez Decl. ¶ 12.

Atkins failed to complete the training, and on or about January 30, 2012, Pitney Bowes terminated his employment. Medina Decl. ¶¶ 17-18; Roelke Decl. ¶ 2.  Atkins was the only active employee at the White and Case New York location who failed to complete the training courses.  Medina Decl ¶ 19.

### C.

On February 7, 2012, Atkins filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  The charge alleges that Pitney Bowes terminated Atkins because he objected to a religiously offensive comment made by Colvil.  Ex. to Pl's. Opp'n Br.  By notice dated April 26, 2012, the EEOC issued Atkins a notice of right to sue on his charge of religious discrimination.  Id.

On July 16, 2012, Atkins filed his Original Complaint. After multiple rounds of amendments—in which Atkins voluntarily dismissed his 42 U.S.C. § 1983 claim and dismissed Gerard Frassita and Fidel Razack as defendants—on June 13, 2014, the

9

remaining defendants moved for summary judgment on the remaining causes of action.  The defendants provided the plaintiff with a "Notice to Pro Se Litigant" as required by Local Rule 56.2, which sets out the responsibilities of a pro se plaintiff in responding to a motion for summary judgment.

### III.

### A.

Atkins alleges that he was terminated because of his race and religion.  Discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, are governed at the summary judgment stage by the burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2]

Under this test, the plaintiff carries the initial burden of establishing a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To meet this burden, the plaintiff must establish that (1) he belongs to a protected class; (2) he was qualified for the position that he held; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an

---

[2]   To the extent Atkins has alleged a claim under 42 U.S.C. § 1981, that claim is also governed by the McDonnell Douglas burden-shifting analysis.  See Sims v. City of New York, No. 08cv5965, 2010 WL 3825720, at *8 (S.D.N.Y. Sept. 30, 2010).

interference of discriminatory intent.  See id.; Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

If the plaintiff can establish the elements of a prima facie case, the burden of production shifts, and the defendant must put forth a "legitimate, nondiscriminatory reason" for the employer's challenged action.  McDonnell Douglas, 411 U.S. at 802; see also Feingold, 366 F.3d at 157.  If the defendant satisfies this burden, then the presumption of discrimination is "rebutted and drops from the case."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal quotation marks omitted) (quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 & n.10 (1981)).  Thereafter, the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, and that the plaintiff's membership in a protected class was.  Burdine, 450 U.S. at 254-56.  The plaintiff must provide admissible evidence that is "sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Feingold, 366 F.3d at 154; see also Mines v. City of New York/DHS, No. 11cv 7886, 2013 WL 5904067, at *5 (S.D.N.Y. Nov. 4, 2013).

### B.

The defendants do not dispute that Atkins has satisfied the first three elements of a prima facie case.  Title VII prohibits

discrimination on the basis of religion and race,[3] 42 U.S.C. § 2000e-2(a), Atkins was qualified for the position that he held, and Atkins was fired from his job.

It is unnecessary to decide whether Atkins has satisfied the fourth prong of his prima facie case because the defendants provided evidence supporting a non-discriminatory reason for Atkins's termination.  And Atkins has not provided evidence from which a rational jury could find that this reason was false and merely a pretext for discrimination.  Therefore, Atkins's discrimination claim fails as a matter of law.[4]

Atkins's failure to complete the required training courses is a legitimate, non-discriminatory reason for his termination. Pitney Bowes required all of its employees to complete the insider ethics course by August 17, 2011, and the data privacy course by October 1, 2011.  Atkins refused to complete these training courses.  Medina, Lopez, and Ali informed Atkins multiple times that he had to finish the training courses,

---

[3]   The EEOC charge listed only "religion" as the alleged basis for discrimination.  However, the defendants did not argue that Atkins failed to exhaust his administrative remedies, and this requirement is not jurisdictional.  See Fernandez v. Chertoff, 471 F.3d 45, 58 (2d Cir. 2006).

[4]   To the extent that Atkins alleges that Pitney Bowes and its employees subjected him to discrimination before April 2006, those claims are also barred by the "Agreement of Settlement and Release."  Atkins Dep. Tr. Ex. 6.  That agreement releases Pitney Bowes from liability "from the beginning of the world to the date of this Release."  Id. ¶ 6.

explained to him that failure to complete the training would result in discipline, and attempted to convince him that no harm would come to him from completing the courses.  Despite receiving multiple warnings and failing to complete the courses, Atkins was terminated.

As to the racial discrimination claim, the only such evidence identified by Atkins is Medina's alleged statement that "[y]ou people [are] always looking for somebody to give you something."  Atkins Dep. Tr. 108.  Although racially charged remarks can support a claim of discrimination, Kirschner v. Office of the Comptroller of the City of N.Y., 973 F.2d 88, 93 (2d Cir. 1992), courts within and outside this Circuit have held that the use of the phrase "you people" is not sufficient to show racial discrimination, without contextual evidence suggesting that the speaker was referring to the plaintiff's race.  See, e.g., Santana v. City of Ithaca, No. 12cv625, 2014 WL 6476160, at *7 (N.D.N.Y. Nov. 19, 2014); Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 253–54 & n.14 (S.D.N.Y. 2014) (collecting out-of-Circuit cases).  Atkins has provided no such evidence.  See Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998) (holding that a single stray comment, "without more, cannot get a discrimination suit to a jury").

Whatever the meaning of Medina's comment, it was unrelated to Atkins's failure to take the required training, and it was

made ten months before Atkins was terminated.  The Second Circuit Court of Appeals has explained that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007).  The gap between Medina's remark and Atkins's termination is too long rebut the defendants' explanation for firing Atkins.  See, e.g., Witkowich v. Gonzales, 541 F. Supp. 2d 572, 585 (S.D.N.Y. 2008) (holding that an ambiguous statement regarding the plaintiff was not probative of discrimination when it was made about a year before the employment decision).  And no reasonable trier of fact could find that the defendants used the training courses as a pretext to fire Atkins when Medina—among others—asked the plaintiff multiple times to complete the courses.

Atkins also appears to allege that he was subject to disparate treatment on the basis of his race.  A plaintiff may raise an inference of discrimination by "showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  But Atkins has failed to show that any non-African Americans were excused from completing the training on

14

account of their race.  Every active employee at the White and
Case New York office—save Atkins—completed the training.

Nor has Atkins provided material facts showing that
Colvil's views on religion had any effect on Atkins's
termination.  Colvil's irreligious statement occurred over a
year before the plaintiff was terminated.  Moreover, Colvil was
Atkins's copy room supervisor, and Atkins was transferred from
the copy room to the mailroom in November 2010.  There is no
evidence that Colvil had anything to do with Atkins's
termination.  See Tomassi, 478 F.3d at 115 ("[R]emarks made by
someone other than the person who made the decision adversely
affecting the plaintiff may have little tendency to show that
the decision-maker was motivated by the discriminatory sentiment
expressed in the remark.").  Colvil's statement and conduct were
also too far removed from Atkins's eventual discharge to show
that Atkins was fire because of his religion.  See Campbell v.
Alliance Nat. Inc., 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000).

Therefore, the defendants' motion for summary judgment
dismissing Atkins's employment discrimination claims is **granted**.[5]

---

[5]     Although not raised by the individual defendants, those
defendants could not be personally liable for this alleged Title
VII violation.  See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d
Cir. 2010) (per curiam).

### IV.

### A.

Atkins alleges that he was retaliated against because he told Medina on August 31, 2009, that Colvil and Razack had falsified their time cards and because he told Medina on November 11, 2009, that Colvil made an allegedly offensive comment about Jesus.  Atkins Tr. 179–80, 186–88.

Title VII makes it "unlawful . . . for an employer to discriminate against [an employee] . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e–3(a).[6]  To state a prima facie retaliation claim under Title VII, the plaintiff must show 1) "participation in a protected activity"; 2) "the defendant's knowledge of the protected activity"; 3) "an adverse employment action"; and 4) "a causal connection between the protected activity and the adverse employment action."  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013) (internal

---

[6]    Atkins did not allege that defendants violated the New York State Human Rights Law ("NYSHRL"), but "[t]he standards for recovery under NYSHRL are 'in accord with Federal standards under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).'"  McQueen-Starling v. United Health Grp., Inc., No. 08cv4885, 2011 WL 104092, at *4 (S.D.N.Y. Jan. 11, 2011) (quoting Ferrante v. Am. Lung Ass'n, 687 N.E.2d 1308, 1311 (N.Y. 1997)).  The plaintiff also has not presented sufficient evidence to withstand a motion for summary judgment dismissing a claim for discrimination arising under the New York City Human Rights Law ("NYCHRL").  See Wilson v. N.Y.P. Holdings, Inc., No. 05cv10355, 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009).

quotation marks omitted) (quoting Jute v. Hamilton Sundstrand
Corp., 420 F.3d 166, 173 (2d Cir. 2005)).

**B.**

Atkins failed to show that he participated in any protected
activity.  This element turns on whether Atkins protested what
he reasonably and in good faith believed to be a Title VII
violation.  See McMenemy v. City of Rochester, 241 F.3d 279, 283
(2d Cir. 2001).  First, the falsification of time cards does not
violate Title VII.[7]  Second, Colvil's allegedly offensive
statement about Jesus also is not conduct that a reasonable
person would believe violated Title VII.

Nor has Atkins shown a causal connection between the
protected activity and the adverse employment action.   The
Supreme Court recently held that "Title VII retaliation claims
must be proved according to traditional principles of but-for
causation." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct.
2517, 2533 (2013).  But on a motion for summary judgment, the
plaintiff can show such causation by demonstrating
inconsistencies in an employer's explanation for the adverse

---

[7]     Similarly, Atkins's assertion that the defendants
terminated him to "cover up" violations of Pitney Bowes company
policy is not—standing alone—sufficient to show that the
supposed retaliation was unlawful.  See Fattoruso v. Hilton
Grand Vacations Co., 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012)
(holding that Title VII does not protect against violations of
company policy), aff'd, 525 F. App'x 26 (2d Cir. 2013).

action and may also rely on other evidence supporting the prima
facie case, including close temporal proximity between the
protected conduct and the adverse action.  Kwan, 737 F.3d at
846-47.

In this case, the evidence of the non-discriminatory
reason—failure to complete the required training—is clear and
consistent.  Moreover there is no close temporal proximity to
support an inference of retaliation.  Atkins's time card and
religion complaints—made on August 31, 2009, and November 11,
2009, respectively—and Atkins's January 30, 2012, termination
are too far apart to establish a causal connection.  See Clark
Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (per
curiam) (holding that a twenty-month period between the
protected activity and the adverse action suggests no causality
at all); Giles v. NBC Universal, Inc., No. 10cv7461, 2011 WL
4376469, at *4 (S.D.N.Y. Sept. 20, 2011) (collecting cases and
noting "periods over one year are generally conclusive that no
retaliation has taken placed").

Finally, as explained above, the defendants identified a
legitimate, non-discriminatory reason for firing Atkins—his
failure to complete mandatory training.  Atkins has not provided

any direct or indirect evidence to show that this reason was untrue or that it was a pretext for retaliation.[8]

Accordingly, the defendants' motion for summary judgment on the retaliation claim is **granted**.

## V.

Atkins alleges that Colvil's conduct created a hostile work environment. "Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard." Summa v. Hofstra Univ., 708 F.3d 115, 123-24 (2d Cir. 2013).[9]

To establish a prima facie case of hostile work environment under Title VII, a plaintiff must show: (1) that discriminatory harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) that a specific basis exists for imputing the objectionable conduct to the employer. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). Atkins

---

[8]    Atkins was transferred to the mailroom in November 2010. He retained the same some job title, salary, and duties. Therefore, the transfer was not a materially adverse change in the terms and conditions of his employment. See Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

[9]    Atkins did not allege that the defendants violated the NYCHRL. And in any event, such a claim would not survive summary judgment. "[D]efendants can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 41 (App. Div. 2009).

must show not only that he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.  Feingold, 366 F.3d at 150. Atkins must also establish that he was subject to a hostile work environment because of a protected characteristic.  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

Atkins has failed to identify sufficient material facts to show a hostile work environment.  Colvil's single statement about Jesus to another co-worker and laughter when he noticed Atkins reading the Bible were not sufficiently severe, humiliating, or threatening to create a hostile work environment.  Nor is there any evidence that Colvil's other conduct—while obnoxious—was because of Atkins's race or religion.  Further, Medina's single comment fell far short of the pervasive conduct required to establish a hostile work environment.

Accordingly, the defendants' motion to dismiss the hostile work environment claim is **granted**.

**VI.**

Atkins alleges that he was assaulted and battered by Lester on February 18, 2011.  Atkins filed his original complaint on July 16, 2012—over one year after the alleged tortious conduct. There is a one-year statute of limitations period for assault and battery claims.  N.Y. C.P.L.R. § 215(3).  And "filing an

20

EEOC charge does not toll the time for filing state tort claims." <u>Castagna v. Luceno</u>, 744 F.3d 254, 258 (2d Cir. 2014). To the extent that Atkins alleges a claim for intentional infliction of emotional distress based on Lester's conduct, this claim is also subject to a one-year statute of limitations. <u>See Callahan v. Image Bank</u>, 184 F. Supp. 2d 362, 363 (S.D.N.Y. 2002). These claims are therefore time barred.

Accordingly, Lester's motion for summary judgment on the assault, battery, and intentional inflection of emotional distress claims is **granted**.

**VII.**

Atkins alleges that Colvil defamed him by writing a letter stating that Atkins had referred to his supervisors as "white devils." Atkins found a copy of this letter on October 10, 2010, and he commenced this lawsuit on July 16, 2012. Defamation claims are also subject to a one-year statute of limitations period. N.Y. C.P.L.R. § 215(3). This claim is therefore time barred.

Accordingly, Colvil's motion for summary judgment on the defamation claim is **granted**.

**VIII.**

Atkins alleges a claim for wrongful termination under New York common law. However, Atkins was an at-will employee, and there is no cause of action for wrongful termination of such an

21

employee under New York law.  See, e.g., Lobosco V. N.Y. Tel.
Co./NYNEX, 751 N.E.2d 462, 464 (N.Y. 2001); Stevens v. New York,
691 F. Supp. 2d 392, 398 (S.D.N.Y. 2009).

Accordingly, the defendants' motion for summary judgment on
the wrongful termination claims is **granted**.

### IX.

In his briefs on this motion, Atkins appears to allege that
the defendants discharged him because he complained that Pitney
Bowes employees violated New York State labor law.  See N.Y.
Lab. Law § 215(1) (prohibiting employers from penalizing an
employee for protesting New York Labor Law violations).
However, this claim was asserted for the first time in response
to the defendants' motion for summary judgment, and the
plaintiff has not requested to amend his complaint.  Therefore
the defendants are entitled to summary judgment on this claim.
See Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir.
2006) (Sotomayor, J.)

In any event, section 215(2)(b) provides that "[a]t or
before the commencement of any action under this section, notice
thereof shall be served upon the attorney general by the
employee."  Atkins has not provided evidence that the New York
State Attorney General was served with notice of this suit.  And
to establish a prima facie case for retaliation under section
215(1), the plaintiff must show a causal connection between the

22

protected activity and the adverse employment action.  Kassman
v. KPMG LLP, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013).  As
explained above, Atkins has failed to present evidence from
which a reasonable juror could conclude that he was discharged
for any reason other than the fact that he failed to take the
training courses.

Accordingly, the defendants' motion for summary judgment on
the section 215 claim is **granted**.

**X.**

On December 22, 2014, the plaintiff filed a "motion
requesting summary judgment."  The motion sought summary
judgment in the amount of $2.6 billion in a "class action suit"
or $85 million in legal costs.  The motion for summary judgment
is procedurally improper because no pre-motion conference was
sought before making the motion as required by this Court's
rules.  It is also procedurally improper because it is
unsupported by a Rule 56.1 statement, which is required by this
District's Local Rules.

Substantively, it is without merit because it seeks to
obtain summary judgment on the plaintiff's discriminatory
termination claim without providing undisputed facts on the
basis of which such a motion could be granted.  Indeed, the
Court has already found that the defendants are entitled to

23

summary judgment dismissing the plaintiff's claims, and there is nothing in the plaintiff's motion that alters that conclusion.

Finally, to the extent that plaintiff claims to add new claims, such as a class action, there is no basis for adding such claims that have not been asserted in the complaint and certainly no basis for granting summary judgment on any such claim.

The plaintiff's "motion" for summary judgment is therefore **denied**.

### CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, they are either moot or without merit.  The defendants' motion for summary judgment is **granted**.  The plaintiff's motion for summary judgment is **denied**.  The Clerk is directed to enter judgment dismissing this case, to close all pending motions, and to close this case.

**SO ORDERED.**

**Dated:    New York, New York**
**          January 9, 2015**                      _____/s/_____
                                                    **John G. Koeltl**
                                          **United States District Judge**